Philip J. CHARLEY;  Katherine
T. Charley, Petitioners–
Appellants,

v.

COMMISSIONER INTERNAL
REVENUE SERVICE,
Respondent–Appellee.

No. 94–70043.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 1995.

Decided July 24, 1996.

Michael Leight, Seal Beach, California, for petitioners-appellants.

Frank P. Cihlar, Tax Division, United States Department of Justice, Washington, D.C., for respondent-appellee.

Before: FARRIS, O'SCANNLAIN, and
TASHIMA,* Circuit Judges.

O'SCANNLAIN, Circuit Judge.

Do travel credits converted to cash in a
personal travel account established by an
employer constitute gross income to the em-
ployee for federal income tax purposes?

## I

Dr. Philip Charley and his wife Katherine
Charley appeal the tax court's determination
of an income tax deficiency for tax year 1988
in the amount of $882 and an addition to tax
of $44 pursuant to Internal Revenue Code
("IRC") § 6653. We affirm on the merits
and reverse the penalty.

During 1988, Truesdail Laboratories
("Truesdail") engaged in the testing business,
including testing urine for horse racing activ-
ities and investigating the causes of industri-
al accidents. Philip was the President of
Truesdail and, together with Katherine,
owned 50.255% of its shares. Philip per-
formed various services for Truesdail includ-
ing inspecting mechanical devices suspected
of failure.

Philip, in his capacity as an employee of
Truesdail, traveled to various accident sites
to inspect machinery. Truesdail had an "un-
written policy" that the frequent flyer miles
that were earned during an employee's travel
for Truesdail became the sole property of the
employee.

During the year at issue, the following
procedures were followed by Truesdail with
respect to Philip's travel:

(1) A client would engage the services of
Truesdail and would direct that Philip
travel to a particular accident site;

(2) If Philip chose to travel to the site
by air, Truesdail would bill the client for
round-trip, first class air travel;

(3) Philip would instruct a travel agent,
Archer Travel Services ("Archer"), to ar-
range for coach service to and from the
site, but to charge Truesdail for first class
travel;

(4) Philip then would use his frequent
flyer miles (largely earned in connection
with his business travel for Truesdail) to
upgrade the coach ticket to first class; and

(5) Philip would instruct Archer to
transfer funds to his personal travel ac-
count amounting to the difference in price
between the first class ticket for which
Truesdail was charged and the coach tick-
et, albeit upgraded, which Philip actually
used.

Over the course of 1988, Archer main-
tained separate travel accounts for Philip and
Truesdail. Philip took four business trips
that year, and using the procedures outlined
above, received $3,149.93 in his personal
travel account from his "sale" of the frequent
flyer miles.

The parties stipulated that Philip and
Katherine did not know that the receipt of
the travel credits was taxable income, and
that they did not intend to conceal the pro-
cess utilized to obtain the travel credits.

The tax court held that the travel credits
constituted taxable income. The tax court
also upheld imposition of an addition to tax
by the Internal Revenue Service ("IRS") of
$44 pursuant to former IRC § 6653(a)(1),[1]
which provided for an addition to tax if any
part of an underpayment resulted from negli-
gence or intentional disregard of rules and
regulations.

The petitioners appeal both the tax court's
determination of an income tax deficiency
and its imposition of the addition to tax
(penalty).

## II

The statute at issue, IRC § 61, pro-
vides that gross income "means all income
from whatever source derived." Gross in-
come has been defined as an "undeniable

---

* At the time of oral argument, Judge A. Wallace
Tashima was a United States District Judge for
the Central District of California, sitting by desig-
nation.

1. In 1989, § 7721 of Pub.L. 101–239 amended
26 IRC § 6653 generally, substituting provisions
relating to failure to pay stamp tax for provisions
relating to additions to tax for negligence and
fraud. The provisions relating to negligence and
fraud are now codified at 26 IRC § 6662(c).

accession[ ] to wealth, clearly realized, and over which the taxpayer[ ][has] complete dominion." *Commissioner v. Glenshaw Glass,* 348 U.S. 426, 431, 75 S.Ct. 473, 477, 99 L.Ed. 483 (1955). The tax court noted that there was no indication Philip could not use the travel credits for personal travel or redeem them for cash. Consequently, the tax court upheld the IRS' determination of deficiency on the ground that:

> Whether we regard this fact situation as a straight "rip-off" by petitioner of his employer or a highly technical "sale" of his frequent flyer miles (which have zero basis) for the credits, the fact remains that petitioner was wealthier after the transaction than before. In such circumstances, the accretion of wealth is the receipt of income.

The Charleys do not dispute the tax court's finding that travel credits were Philip's to use for personal travel. Nor do they dispute the tax court's conclusion that Philip had sole control over the credits in his account. Rather, the Charleys argue that no taxable event occurred. We find this argument unpersuasive.

The Charleys argue that this case raises the question of whether, in the abstract, frequent flyer miles constitute gross income. We disagree and do not reach that issue.

As the tax court noted, the case can be analyzed in one of two ways. First, the travel credits which were converted to cash can be characterized as additional compensation. On this view, Philip received property from his employer in the form of an account upon which he could draw up to $3,149.93, which he did. This is so because Truesdail paid for first-class airfare and allowed Archer to credit Philip's account with the difference between the first-class price and the coach price. The funds constituting the difference came from Truesdail; Philip consequently received compensation in the amount of $3,149.93 from his employer. The fact that the travel credits were exchanged for frequent flyer miles simply is not relevant to the analysis.

In the alternative, if it is assumed that the frequent flyer miles were not given to Philip by Truesdail, but belonged to him all along, then the transaction can be viewed as a disposition of his own property. Gross income includes "[g]ains derived from dealings in property." IRC § 61(a)(3). A gain from the disposition of property is equal to the "amount realized" from the disposition minus the property's adjusted basis. IRC § 1001(a). The amount realized from a disposition of property is the sum of any money received plus the fair market value of the property (other than money) received. IRC § 1001(b). The adjusted basis is generally determined by reference to cost. IRC § 1012.

Because Philip received the frequent flyer miles at no cost, he had a basis of zero. He then exchanged his frequent flyer miles for cash, resulting in a gain of $3,149.93 (the fair market value of the property received minus the adjusted basis of zero).

■ Thus, the funds credited to Philip's account are taxable, whether they are characterized as a gain from the disposition of property or as additional compensation, unless he can show that they qualify for an exclusion. Philip cannot maintain that the funds constituted a non-taxable gift because IRC § 102(c), concerning exclusions for gifts, provides that "[s]ubsection (a) shall not exclude from gross income any amount transferred by or for an employer to, or for the benefit of, an employee."

■ Philip argues the credits should be construed as a "no-additional-cost service," which is excludable pursuant to IRC § 132(a). However, in order to qualify for this exclusion, the service in question must, among other things, be "offered for sale to customers in the ordinary course of the line of business of the employer in which the employee is performing services." IRC § 132(b). Truesdail obviously did not offer frequent flyer miles to customers in the ordinary course of its business; thus, the travel credits at issue here cannot be deemed an excludable no-additional-cost service.

In sum, we hold that the tax court was correct in concluding that the travel credits under the facts of this case constituted taxable income.

### III

The IRS imposed an addition to tax in the amount of $44 pursuant to the former version of IRC § 6653, which provided for an addition to tax if any part of an underpayment is due to negligence or intentional disregard of rules or regulations.

Philip has the burden of proving that the underpayment was not due to negligence. *Allen v. Commissioner*, 925 F.2d 348, 353 (9th Cir.1991). Former section 6653(a)(3) defined "negligence" as including "any failure to make a reasonable attempt to comply with the provisions of this title." Similarly, case-law has defined "negligence" as the "lack of due care or the failure to do what a reasonable and prudent person would do under similar circumstances." *Allen*, 925 F.2d at 353.

We are persuaded that the tax court erred in sustaining the penalty. There is nothing in the record which would cause a reasonable person to conclude that the travel credit conversion would constitute taxable income. As the government conceded in its brief, "the tax treatment of frequent flyer bonus programs is still under consideration." There is no showing that the conventional personal use of frequent flyer miles in the late 1980s gave rise to taxable income under then-current IRS policy. Therefore, the penalty for negligent or intentional disregard of IRS rules was not warranted.

The decision of the tax court is AFFIRMED in part and REVERSED in part. Each party shall bear his or her own costs on appeal.