T.C. Summary Opinion 2002-105

UNITED STATES TAX COURT

STEVEN L. AND LAURA J. CHAMBERS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1345-01S.                    Filed August 7, 2002.

Steven L. and Laura J. Chambers, pro se.

Dennis R. Onnen, for respondent.


COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

---

[1]   Unless otherwise indicated, subsequent section
references are to the Internal Revenue Code in effect for the
years at issue.  All Rule references are to the Tax Court Rules
of Practice and Procedure.

Respondent determined deficiencies of $2,707, $3,318, and $1,058 in petitioners' Federal income taxes, respectively, for 1997, 1998, and 1999, and penalties under section 6662(a) in the amounts of $541, $664, and $212 for 1997, 1998, and 1999, respectively.

Some of the facts were stipulated, and those facts, with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petition was filed, petitioners' legal residence was Rio Rancho, New Mexico.

The issues for decision are: (1) Whether petitioners are entitled to itemized deductions for charitable contributions and unreimbursed employee business expenses for the 3 years at issue, and, additionally, for a deduction for medical expenses for 1997, and (2) whether petitioners are liable for the accuracy-related penalties under section 6662(a). In addition, the Court considers the applicability of section 6673(a) to the facts of this case.

Petitioners were both employed during the 3 years in question. Mr. Chambers was a technician for GSA Albuquerque Federal Building during 1997 and 1998. He also worked for Timberland Services, Inc., for a portion of 1997 and for Presbyterian Healthcare Service in 1998. During 1999, he worked only for Presbyterian Healthcare Service. Mrs. Chambers was a document controller for Intel Corp. during 1997 and for a portion

of 1998. In 1998, she also worked for Gateway 2000 Technical Support. During 1999, she was employed by the Gateway company and Sun Healthcare, Inc. Together, petitioners reported $59,438, $68,603, and $37,245 in salaries and wages, respectively, for the 3 years at issue.

Prior to the years at issue, petitioners' tax returns were prepared by a local tax return preparer. Sometime before filing their 1997 return, petitioners explored the idea of having someone else prepare their returns because they were "a little nervous about handling our taxes". At that time, petitioners had exercised stock options that Mrs. Chambers received from her employer, Intel Corp., and, because of that, they decided to employ a different return preparer. A friend recommended a return preparer, Robin Beltran, and they engaged him for the 3 years at issue.[2] It was represented to petitioners that "Robin was easy going" and "required very little information". Accordingly, Mr. Beltran prepared petitioners' returns for the 3 years in question, as well as for 2000, which is not before the Court.

For each of the years in question, petitioners claimed itemized deductions on Schedule A, Itemized Deductions, of their

---

[2] This case is one of numerous cases heard by the Court involving tax returns prepared by Mr. Beltran, which essentially involve the same deductions at issue here.

Federal income tax returns. On the 1997 return, petitioners claimed itemized deductions totaling $21,622, for 1998 the itemized deductions totaled $24,811, and for 1999 the deductions totaled $14,250. In the notice of deficiency, respondent disallowed $13,968, $15,910, and $14,250, respectively, of the itemized deductions for the 3 years in question.[3]

At the time petitioners met with Mr. Beltran for preparation of their 1997 return, they were aware and knew that documentary information was necessary to substantiate the income and expenses reported and claimed on their returns. They presented such information to Mr. Beltran; however, as Mrs. Chambers testified at trial: "We handed Robin everything we had and he handed it back to us, stating that he didn't need to see what we had."

The only adjustments in the notice of deficiency relate to petitioners' itemized deductions for the 3 years in question. On their 1997 return, petitioners claimed an itemized deduction of $5,842 for medical and dental expenses, prior to application of the 7.5-percent limitation under section 213(a). Respondent disallowed the amount claimed for lack of substantiation.

---

[3] For 1997 and 1998, other claimed itemized deductions were not adjusted, and the total of such allowed deductions exceeded the standard deduction under sec. 63(c). Petitioners, therefore, were allowed itemized deductions for these 2 years in the notice of deficiency. For 1999, petitioners were allowed the standard deduction under sec. 63(c).

The other adjustments for the 3 years in question relate to petitioners' claimed deductions for charitable contributions and unreimbursed employee business expenses, all of which were disallowed for lack of substantiation.

Prior to trial, counsel for respondent mailed three letters to petitioners offering to meet and to consider any documentary information they had with respect to the items at issue. Petitioners never responded to these letters and, at trial, stated that the letters had been referred to their return preparer, Mr. Beltran, who had agreed to take the matter up with respondent. Mr. Beltran never contacted respondent, nor did petitioners attempt to contact respondent, even though they knew Mr. Beltran had disregarded his offer of assistance. For the first time, on the date the case was calendared for trial, petitioners presented to respondent some documentation to support their charitable contributions and unreimbursed employee expenses. Petitioners presented no information with respect to the disallowed medical expenses for 1997, stating at trial "up until today, we did not realize that was an issue and we weren't prepared for that".[4]

---

[4] The Court observes that, had petitioners followed up on respondent's three letters, they would have known that this item was at issue, notwithstanding that the adjustment is clearly set out in the notice of deficiency.

In connection with the first issue, whether petitioners are entitled to deductions for medical and dental expenses for 1997, based on the recited factual predicate, the Court sustains respondent on this issue.[5]

With respect to the charitable contributions, petitioners deducted the following amounts on their returns, all of which were disallowed by respondent:

|  | 1997 | 1998 | 1999 |
|---|---|---|---|
| Cash | $4,700 | $5,157 | $2,502 |
| Noncash | 453 | 413 | 413 |
| Total | $5,153 | $5,570 | $2,915 |

From petitioners' testimony at trial, the above amounts were arbitrarily determined by the return preparer, Mr. Beltran, who, as noted earlier, advised petitioners that substantiating information was not necessary for such deductions.

---

[5]   The Court takes cognizance of sec. 7491, which, in certain instances, places the burden of proof on respondent with respect to examination of returns commencing after July 22, 1998. Although the parties did not address the applicability of sec. 7491 to this case, the Court notes that, because of the years involved, the examination of petitioners' returns at issue here likely commenced after July 22, 1998.  However, for the burden to be placed on the Commissioner, the taxpayer must comply with the substantiation and recordkeeping requirements of the Internal Revenue Code.  Sec. 7491(a)(2)(A) and (B).  In addition, sec. 7491(a) requires that the taxpayer cooperate with reasonable requests by the Commissioner for "witnesses, information, documents, meetings, and interviews".  Sec. 7491(a)(2)(B).  On this record, the burden has not shifted to respondent under sec. 7491.  Higbee v. Commissioner, 116 T.C. 438 (2001).

At trial, petitioners presented a list of checks and the amounts of each check for contributions to their church during 1999. However, no copies of the checks or other receipts to substantiate the amounts listed were submitted. The list, although purportedly prepared by the church, was not signed by either the pastor or any representative of the church. For 1998, petitioners presented a similar list of their contributions to the same church but also included check register receipts totaling $200. No documentation was submitted for church contributions during 1997. Petitioners presented copies of several receipts for noncash contributions during 1999 to an organization, Arc of New Mexico; however, except for three receipts, the properties donated are not described, nor are any costs or values shown for such properties. The three receipts that did list values were in the amounts of $800, $675, and $375. Two other receipts were submitted for noncash contributions to Clothes Helping Kids for various household items donated during 1997. These receipts listed values of $400 and $250 for the household items. Petitioners' tax returns did not include Internal Revenue Service Form 8283, Noncash Charitable Contributions, of property other than money, which form is required for noncash contributions in excess of $600.[6]

---

[6] Although petitioners claimed less than $500 in noncash charitable contributions on their returns for each of the years

(continued...)

On this record, the Court sustains respondent on the disallowance of petitioners' noncash charitable contributions for the 3 years at issue.  As to the cash contributions, the Court, pursuant to its discretionary authority under Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), allows petitioners cash contribution deductions of $200 for each year at issue.

With respect to petitioners' unreimbursed employee business expenses and other miscellaneous deductions, the following amounts were claimed on their returns, prior to application of the 2-percent limitation under section 67(a):

|  | 1997 | 1998 | 1999 |
|---|---|---|---|
| Unreimbursed employee expenses | $8,872 | $11,325 | $5,372 |
| Tax preparation | 200 | 400 | 500 |
| Total | $9,072 | $11,725 | $5,872 |

All of these expenses were disallowed by respondent in the notice of deficiency.  The Court notes that the unreimbursed employee expenses equal 26.4 percent, 16.5 percent, and 14.4 percent of

---

[6](...continued)
in question, it is evident from petitioners' testimony at trial that their claimed noncash contributions, at least for some of the years in question, were in excess of $500.  It is evident to the Court that petitioners' return preparer intentionally placed the amounts of their noncash contributions on their returns at under $500 to avoid compliance with sec. 1.170A-13(b)(3), Income Tax Regs.

the salaries and wages petitioners earned each year. The amounts claimed allegedly represented the costs petitioners incurred in using their personal vehicles in connection with their employment. Some of the expenses also were for what petitioners identified as "Work/Tool Expenses".

Petitioners did not maintain any log or other record documenting the dates, times, and places their vehicles were used in connection with their respective employments during the years in question.

The deductions cannot be allowed for the reason that, under section 274(d) and the regulations thereunder, vehicle expenses are subject to strict substantiation rules that require "adequate records" through either an account book, diary, statement of expense, or similar record, as well as documentary evidence to establish each element of an expenditure. Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). No records were presented at trial to substantiate these expenses; consequently, respondent is sustained on the disallowance of the employee business expense deductions.[7]

---

[7]   The Forms W-2, Wage and Tax Statement, that were offered in evidence with petitioners' tax returns indicate that petitioner Steven L. Chambers was an employee of the United States Government. The Court is very skeptical that a Federal employee incurring job-related expenses of the magnitude claimed on petitioners' returns would not have been reimbursed in whole or in part by the employing Federal agency.

Petitioners also claimed work/tool expenses of $216.41, $319.82, and $270.16 for 1997, 1998, and 1999, respectively. Although petitioners presented a list of the various retail places where the expenses were incurred, at places such as Home Depot, Pep Boys, Harbor Freight, and others, no documentation was presented describing the tools or other merchandise that was purchased and the need for or the use of such merchandise in connection with their employment. The Court, therefore, rejects petitioners' claim to an allowance of work/tool expenses for the years in question.

As noted above, petitioners claimed deductions for tax preparation fees for each of the years in question. The Court need not pass upon the substantiation of these expenses because these expenses, even if allowable, would not exceed 2 percent of petitioners' adjusted gross income under section 67(a).

Petitioners contend they should be absolved of liability for the section 6662(a) penalties because they relied on the representations of their return preparer.

The Court is satisfied that petitioners knew that the amounts deducted on their tax returns for charitable contributions and employee business expenses were false. They even submitted records to their return preparer that purportedly would have substantiated their deductions, which their preparer declined to use. Petitioners knew they could only deduct

expenses actually incurred and, therefore, knew that the amounts claimed on their returns were false.

Section 6662(a) provides for an accuracy-related penalty equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence consists of any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code, and disregard consists of any careless, reckless, or intentional disregard. Sec. 6662(c). The courts have refined the Code definition of negligence as a lack of due care or failure to do what a reasonable and prudent person would do under similar circumstances. Allen v. Commissioner, 925 F.2d 348, 353 (9th Cir. 1991), affg. 92 T.C. 1 (1989). Section 1.6662-3(b)(1), Income Tax Regs., provides that "Negligence is strongly indicated where * * * a taxpayer fails to make a reasonable attempt to ascertain the correctness of a deduction * * * on a return which would seem to a reasonable and prudent person to be 'too good to be true' under the circumstances".

An exception applies when the taxpayer demonstrates (1) there was reasonable cause for the underpayment, and (2) the taxpayer acted in good faith with respect to the underpayment. Sec. 6664(c). Whether the taxpayer acted with reasonable cause and in good faith is determined by the relevant facts and

circumstances.  The most important factor is the extent of the taxpayer's effort to assess the proper tax liability. Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.  Under section 1.6664-4(b)(1), Income Tax Regs., "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer."  Moreover, a taxpayer is generally charged with knowledge of the law.  Niedringhaus v. Commissioner, 99 T.C. 202, 222 (1992).  Although a taxpayer is not subject to the addition to tax for negligence where the taxpayer makes honest mistakes in complex matters, the taxpayer must take reasonable steps to determine the law and to comply with it.  Id.

Under certain circumstances, a taxpayer may avoid the accuracy-related penalty for negligence where the taxpayer reasonably relied on the advice of a competent professional. Sec. 1.6664-4(b)(1), Income Tax Regs.; see sec. 6664(c); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  However, reliance on a professional adviser, standing alone, is not an absolute defense to negligence; it is only one factor to be considered. In order for reliance on a professional adviser to relieve a taxpayer from the negligence penalty, the taxpayer must establish

that the professional adviser on whom he or she relied had the expertise and knowledge of the relevant facts to provide informed advice on the subject matter. Freytag v. Commissioner, supra at 888.

Petitioners made no effort to ascertain the professional background and qualifications of their return preparer. They knew that their claimed deductions were not based on the amounts they actually expended. That circumstance should have prompted petitioners to determine whether such representations by their return preparer were correct. They did not consult other tax professionals to verify the accuracy of the returns prepared by Mr. Beltran or the representations he made to them regarding their deductions. The Court is satisfied from the record that Mr. Beltran knew, or had reason to know, all the relevant facts upon which, had he been a qualified professional, he could have accurately advised petitioners on the amount of their allowable deductions. Mr. Beltran listed unrealistic amounts as deductions on petitioners' returns. Petitioners knew they were required under the law to substantiate deductions claimed on their returns. The circumstances should have prompted them to look beyond and ascertain the accuracy of their preparer's representations. Petitioners, therefore, made no effort to assess their tax liabilities correctly. On this record, the

Court sustains respondent on the section 6662(a) accuracy-related penalties for the years in question.

Section 6673(a) authorizes the Court to require a taxpayer to pay to the United States a penalty not exceeding $25,000 when, in the Court's judgment, proceedings have been instituted or maintained by the taxpayer primarily for delay or where the taxpayer's position in the proceeding is frivolous or groundless. The Court considers petitioners' claim that they should not be liable for the deficiencies and penalties to be frivolous and groundless. Petitioners knew, or should have known, that a substantial portion of the itemized deductions at issue was false and could not be sustained. Petitioners knew that they could deduct only amounts that they had actually paid. They made no attempt to determine the qualifications of their return preparer and, moreover, did not seek other professional advice to satisfy the accuracy of their returns. Petitioners cited no legal authority to the Court that, under similar facts, would exonerate them from the penalties under section 6662(a).

The function of this Court is to provide a forum to decide issues relating to liability for Federal taxes. Any reasonable and prudent person, under the facts presented to the Court, should have known that petitioners' claimed deductions could not have been sustained, and petitioners knew that. This Court does not and should not countenance the use of this Court as a vehicle

for disgruntled litigants to proclaim the wrongdoing of another, their return preparer, as a basis for relief from penalties that were determined by respondent on facts that clearly are not sustainable.  Golub v. Commissioner, T.C. Memo. 1999-288. Petitioners, therefore, have interfered with the Court's function to the detriment of other parties having cases with legitimate issues for the Court to consider.  Petitioners have caused needless expense and wasted resources, not only for the Court, but for its personnel, respondent, and respondent's counsel. Under these circumstances, the penalty under section 6673 is warranted, and petitioners will be ordered to pay a penalty of $500 to the United States under section 6673(a).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.