T.C. Memo. 2007-320

UNITED STATES TAX COURT

ROBERT L. AND BRENDA J. TARTER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20688-05.                    Filed October 25, 2007.

<u>Eric Johnson</u>, for petitioners.

<u>Christian A. Speck</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Petitioners petitioned the Court to
redetermine respondent's determination of a 2001 income tax
deficiency of $457,491, a section 6662(a)[1] accuracy-related

--------

[1]Rule references are to the Tax Court Rules of Practice and
Procedure.  Unless otherwise noted, section references are to the
applicable versions of the Internal Revenue Code (Code).

penalty of $91,498.20, and a section 6651(a)(1) addition to tax of $22,693.10 for failure to file timely. With regard to the income tax deficiency, we decide whether petitioners' claimed trade or business expense deductions are allowable. We hold they are not. We also decide whether petitioners are liable for the accuracy-related penalty. We hold that they are. Petitioners do not dispute that their income tax return was filed untimely and do not assert that a reasonable basis existed for their late filing. We sustain the addition to tax without further comment.

FINDINGS OF FACT

The parties have filed with the Court stipulated facts and exhibits. The stipulated facts are found accordingly. Petitioners are husband and wife, and they jointly filed a 2001 Form 1040, U.S. Individual Income Tax Return. They resided in Lincoln, California, when their petition was filed with the Court.

A. Petitioner's Business History

Robert Tarter (petitioner) went into business for himself in approximately 1991, beginning B & B Construction (B&B). B&B was engaged in the business of preparing and pouring concrete foundations and flatwork for residential projects.

B&B operated as a sole proprietorship at its inception and was still operating as a sole proprietorship at the beginning of 2001. On December 15, 2000, petitioner formed BBT Enterprises,

Limited (BBT), a limited partnership. The partners of BBT were petitioner and B & B Complex Trust, with petitioner having a 1-percent interest and B & B Complex Trust having a 99-percent interest. By at least June 2001, B&B began to operate as BBT. No Form 1065, U.S. Return of Partnership Income, was filed for BBT for 2001. No Form 1041, U.S. Income Tax Return for Estates and Trusts, was filed for the B & B Complex Trust for 2001. Petitioner reported all claimed income and deductions of the concrete business for 2001 as those of a sole proprietorship on their Schedule C, Profit or Loss From Business.

A checking account for BBT, d.b.a. B&B, was opened on May 17, 2001 (BBT account). At that time, a checking account existed in the name of B&B and petitioners (B&B account). Sometime after August or September 2001, operating expenses for the concrete construction business were paid out of the BBT account. After September 2001, funds represented by checks from the BBT account were not funds that came from the B&B account.

B. Additional Entities

On September 15, 2000, petitioner set up the entity V & E Leasing, Ltd., a California limited partnership (V&E Leasing). The partners of V&E Leasing were petitioner and Granite Bay Complex Trust. Upon formation of V&E Leasing, petitioner held a 1-percent interest, and Granite Bay Complex Estate Trust held a 99-percent interest. The depreciable vehicles and smaller

equipment assets that petitioner used for the concrete construction business were transferred to V&E Leasing during 2001.  No Form 1065 was filed for V&E Leasing for 2001.

Also on September 15, 2000, petitioner set up the entity B & B Concrete Pumping, Ltd., a California limited partnership (B&B Concrete Pumping).  The partners of B&B Concrete Pumping were petitioner and Granite Bay Complex Trust.  Upon formation of B&B Concrete Pumping, petitioner held a 1-percent interest and Granite Bay Complex Estate Trust held a 99-percent interest in B&B Concrete Pumping.  The bigger, more expensive concrete pumps that petitioner used for the concrete construction business were transferred to B&B Concrete Pumping during 2001.  No Form 1065 was filed for B&B Concrete Pumping for 2001.

C.   Payments to Workers

Beginning in October 2000, petitioner began to use a payroll system under which B&B's approximately 100 to 200 employees were leased to an employee leasing company, Labor Force Partners, Ltd. (payroll company).  Through this leasing arrangement, the payroll company became the primary legal employer of record.

The individuals who originally presented and promoted the payroll system to petitioner were David Clancy and Ray Vallejo.  In September 2000, petitioner arranged for an all-employee meeting for B&B workers.  At that meeting, Clancy and Vallejo told the employees about the new payroll system.

Petitioner did not recall ever telling the employees they were "fired".

The payroll company did not make any of the decisions regarding the employees, for example who would be hired or fired and how much they would be paid, or otherwise supervise the day-to-day activities of the workers. After the fall of 2000, petitioner continued to make all the hiring and firing decisions with respect to employees of the concrete business. Similarly, after the fall of 2000, petitioner or supervisors of B&B continued to give the day-to-day instructions to employees of the concrete business. In general, employees were the same individuals, performed the same type of work, were supervised the same way, and were paid the same amounts both before and after petitioner began paying the employees through the payroll company.

The payroll company set up two payroll accounts with Paychex, a large processing company. Pursuant to this new payroll system, instead of receiving one paycheck, each employee received two. The first paycheck covered the minimum wage that State law required. The balance due an employee, called a "dividend" payment, was paid in a second check from an account under the name of Labor Force Partners Trust. Petitioner did not pay employment taxes or workers compensation on the portion of the wages greater than the minimum wage.

Shortly after the new payroll system began, petitioners' return preparer, Shannon Perez (Perez), assumed bookkeeping for the concrete business. Perez also prepared petitioners' 2001 Form 1040. That Form 1040 was prepared in haste in order for petitioners to satisfy a requirement to close on a new home. Neither petitioners nor Perez thought the 2001 return was accurate when prepared and filed, and they anticipated its amendment. On the Form 1040, petitioners reported approximately $15 million in receipts and slightly more in expenses, resulting in a net Schedule C loss of approximately $157,000.

Perez kept track of the expenses of the concrete business by categorizing and entering those expenses into a computer Quickbooks data file using bank statements, check stubs, and canceled checks that petitioner provided. To prepare petitioners' return, Perez ran reports from the Quickbooks database.

D.  Disallowed Deductions

Petitioners' 2001 Form 1040 was selected for audit, and respondent, in the notice of deficiency mailed to petitioners on August 29, 2005, determined that petitioner failed to substantiate five categories of expenses on Schedule C:

| | | |
|---|---|---|
| (1) | Employee benefits | $97,212 |
| (2) | Payroll taxes | 578,441 |
| (3) | Outside services | 104,592 |
| (4) | Rent/lease Vehicles/machinery/equipment | 187,004 |
| (5) | Depreciation and sec. 179 expense | 407,075 |

These disallowed amounts are the amounts that petitioner claimed in the referenced categories on his Schedule C.

E.  Substantiation

Perez, no later than September 11, 2006, acknowledged errors in every category of expense claimed on petitioner's Schedule C with the possible exception of depreciation.  Neither Perez nor petitioners kept books and records of expenses of the concrete business for 2001 that reflected the deduction amounts claimed in the categories listed on petitioner's 2001 Schedule C.

F.  Financial Statements

Perez prepared financial statements that she knew were inconsistent with petitioners' 2001 tax return, which she had prepared.  The financial statements made petitioner's business look more profitable than it appeared on his Schedule C.  The 2001 profit and loss statement purporting to show petitioners' 2001 net income from the concrete business was intended to be used to obtain a license in Nevada and showed $999,648 more in net income than the net income reflected on petitioner's Schedule C.

G.   Discovery

Before trial, on July 7, 2006, respondent served interrogatories on petitioners, asking them to list every item claimed as an expense deduction on the 2001 Schedule C.  Perez prepared petitioners' responses to those interrogatories.  For every item except depreciation that respondent disallowed in the notice of deficiency, petitioners' interrogatory responses reflected deduction amounts greater than the amounts reported on the Schedule C.

H.   The Seizures

On November 30, 2005, agents of respondent's Criminal Investigation Division (CID) executed simultaneous search warrants at petitioner's business and at the payroll company.  From November 30, 2005, through the trial in this case, CID has retained originals or copies of all electronic or paper records seized pursuant to the search warrants.  At the time of the seizures, CID created an inventory of the seized paper documents.  The seized paper records consist of approximately 85 boxes of materials seized from B&B Construction and 40 boxes of materials seized from the payroll company.

OPINION

The burden of proof is on petitioners to show that respondent's determinations set forth in the notice of deficiency are incorrect.  See Rule 142(a)(1); See Welch v. Helvering, 290

U.S. 111, 115 (1933). Deductions are strictly a matter of legislative grace, and petitioners must show that their claimed deductions are allowed by the Code. Petitioners must also keep sufficient records to substantiate any deduction that would otherwise be allowed by the Code. See sec. 6001; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). In order to meet their burden of proof, petitioners must introduce sufficient evidence to: (1) Make a prima facie case establishing that respondent committed the errors alleged in the petition and (2) overcome the evidence submitted by (or otherwise favorable to) respondent. See Lyon v. Commissioner, 1 B.T.A. 378, 379 (1925). For the burden to shift to respondent, petitioners must comply with the substantiation and record-keeping requirements of the Code. See sec. 7491(a)(2)(A) and (B). We conclude that the burden of proof has not shifted to respondent with respect to any of the issues affecting petitioners' tax liability because we find that petitioners failed to comply with substantiation requirements of the Code.

A.   Employee Benefits and Payroll Taxes

Respondent's notice of deficiency disallowed the amounts petitioner claimed on his Schedule C for employee benefits and payroll taxes, $97,212 and $578,441, respectively. Respondent determined that the expenses were disallowed because petitioners did not provide information to support the deductions and did not

establish that the expenses were ordinary and necessary. Respondent argues on brief that petitioners have never established that these costs were not claimed on the 2001 Schedule C as labor costs under cost of goods sold.

In support of their benefits and payroll tax deductions, petitioners detailed amounts paid to Kaiser for medical insurance invoices and amounts paid to the payroll company for disability insurance. From the evidence presented, it appears that payments were made for medical and disability benefits; however, these proofs of payment in no way address nor negate respondent's argument that those items may already be included in petitioner's Schedule C as labor costs under cost of goods sold. We sustain respondent's determination on this issue.

B.  Outside Services

Respondent's notice of deficiency disallowed the amount petitioner claimed on his Schedule C for "Outside services", $104,592. Respondent claims that petitioners did not provide information to support the deductions and that petitioners did not establish that the expenses were ordinary and necessary. In support of their outside services deduction, petitioners explain on brief that the amount represents legal and engineering fees.

Perez tried to substantiate the expenses for "outside services" with a list that included several payments to "Operating Engineers". Perez claimed Operating Engineers

belonged in that category because they provided engineering services or certifications as shown in their invoices; however, Operating Engineers was the union for the concrete pump truck operators.  In the check registers, the payments to Operating Engineers were categorized as "Subcontractors".  According to the interrogatory responses, items categorized as "Subcontractors" were part of the cost of goods sold.

Although we find it likely that the payments claimed by petitioners were in fact made for legal and engineering costs, those fees may already be included in petitioner's Schedule C as a part of cost of goods sold.  Also, to the extent that those fees were for services performed for BBT and not B&B, they are not deductible by petitioners.[2]  Petitioners provide no information on those components that make up the cost of goods sold amount claimed on the Schedule C, nor do they distinguish fees paid by B&B from those paid by BBT.  In the light of this absence of evidence, the credible evidence in the record does not permit us to find that the outside services deduction is supportable as an independent Schedule C deduction.

---

[2]For example, a fee for legal services, dated June 1, 2001, is directed to "BBT Enterprises dba B & B Construction", indicating that BBT had already set itself forth as a business entity by that date.

C.    Rent/Lease Vehicles/Machinery/Equipment

Respondent's notice of deficiency disallowed the amount petitioner claimed on his Schedule C for renting or leasing of vehicles, machinery, and equipment, $187,004.  The notice of deficiency stated that this cost was disallowed because petitioners did not provide information to support the deductions and did not establish that the expenses were ordinary and necessary.  Petitioners support this deduction with a stipulation listing checks and a record of check stubs.

We note that the checks paid from the beginning of the year through July 21, 2001, were paid out of the B&B account while the checks paid after that date were paid out of the BBT account.  All checks dated from July 31, 2001, through the end of 2001 were issued from the BBT account.  BBT did not file a Form 1065 for 2001, nor did B&B Complex Trust, the 99-percent partner of BBT, file a Form 1041 for 2001.  Petitioner cannot claim a deduction on his Schedule C for the rent/lease of vehicles, machinery, and equipment if those expenses were in fact incurred by BBT.  In the light of all the evidence, we hold that the deductions on Schedule C are limited to only those expenses stipulated by the parties to have been paid out of the B&B account.

D.    Depreciation

Respondent's notice of deficiency disallowed the amount claimed on Schedule C for depreciation, $407,075.  The notice

stated that the depreciation was disallowed because petitioners did not provide information to support the deductions and did not establish that the expense was ordinary and necessary. In support of the depreciation expense, petitioners offer a one-page depreciation schedule that includes the bases of certain stated assets, the method of depreciation, and the 2001 deprecation claimed.

Section 167(a) allows a deduction for a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in a trade or business or held for the production of income. The basis on which a depreciation deduction is allowable with respect to any property under section 167(a) is the adjusted basis of the property, determined under section 1011 for the purpose of determining gain on the sale or other disposition of the property. See sec. 167(c).

Petitioners' depreciation schedule lacks an essential piece of information, the owner of the assets. For 2001, possible asset owners include petitioners, BBT, V&E Leasing, B&B Concrete Pumping, or perhaps one of the partners of one of these partnerships, and it is certainly possible, if not likely, that ownership of the itemized assets changed throughout 2001. Although we are satisfied that a concrete business would have depreciable assets, we cannot find evidence in the record by which we can determine the amount of the depreciation expense for

petitioner's Schedule C; therefore, we sustain respondent's determination with respect to depreciation.[3]

E.   Accuracy-Related Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a).  Section 6662(a) imposes an accuracy-related penalty equal to 20 percent of the portion of an underpayment that is attributable to, among other things, negligence.  Petitioners will avoid this penalty if the record shows that they were not negligent; i.e., they made a reasonable attempt to comply with the provisions of the Code and they were not careless, reckless, or in intentional disregard of rules or regulations.  See sec. 6662(c); Keeler v. Commissioner, 243 F.3d 1212, 1221 (10th Cir. 2001), affg. Leema Enters., Inc. v. Commissioner, T.C. Memo. 1999-18.  Negligence connotes a lack of due care or failure to do what a reasonable and prudent person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1 (1989), affd. 925 F.2d 348 (9th Cir. 1991).  An

---

[3]As noted above, on Nov. 30, 2005, CID agents executed simultaneous search warrants at petitioner's business and the payroll company, and respondent has remained in possession of those materials through the date of trial.  The record does not provide support that this circumstance impaired petitioners' preparations for and offering of evidence at trial.  In fact, after this case was set for trial, respondent moved for continuance, but petitioners opposed that motion; and the request for continuance was denied.  Further, Perez testified that the information she had used to prepare petitioner's Schedule C came from the Quickbooks accounting system that she used and that she had been able to restore that information from Quickbooks files backups that had not been seized.

accuracy-related penalty is not applicable to any portion of an underpayment to the extent that a taxpayer has reasonable cause for that portion and acts in good faith with respect thereto. See sec. 6664(c)(1).

Respondent bears the burden of production with respect to the accuracy-related penalty. Sec. 7491(c). To meet this burden of production, respondent must produce sufficient evidence that it is appropriate to impose an accuracy-related penalty. Once respondent has produced sufficient evidence, the burden of proof is upon petitioners. See Higbee v. Commissioner, 116 T.C. 438, 449 (2001). Petitioners may carry their burden by proving that with respect to their underpayment there existed reasonable cause and they acted in good faith. Sec. 6664(c)(1).

Respondent has satisfied the burden of production in that the record establishes that petitioners failed to substantiate their claimed deductions. Section 6001 imposes on petitioners a duty to maintain books and records sufficient to support items reported on their returns, and petitioners' breach of that duty is contrary to what a prudent and responsible taxpayer would have done under the circumstances. See sec. 1.6662-3(b)(1), Income Tax Regs. Further, petitioners have failed to persuade us that their failure to maintain the requisite substantiation was excused by reasonable cause and good faith; therefore, we sustain

respondent's determination that petitioners are liable for the accuracy-related penalty under section 6662(a).

We have considered all arguments by petitioners for holdings contrary to those which we reach herein. To the extent not discussed, we conclude that those arguments are irrelevant or without merit.

<u>Decision will be entered</u>

<u>under Rule 155.</u>