T.C. Memo. 2007-165

UNITED STATES TAX COURT

ELIZABETH LAI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 142-05.                    Filed June 26, 2007.

<u>Kevin O'Connell</u>, for petitioner.

<u>Wesley F. McNamara</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined deficiencies and penalties with respect to petitioner's 1999, 2000, and 2001 Federal income tax as follows:

| | | Penalties | |
|---|---|---|---|
| Year | Deficiency | Sec. 6662(a)[1] | Sec. 6663 |
| 1999 | $45,969.00 | $2,434.20 | $25,348.50 |
| 2000 | 42,401.00 | -- | 31,778.25 |
| 2001 | 38,393.00 | -- | 28,761.00 |

After concessions,[2] the issues remaining for decision are: (1) Whether petitioner failed to report income from La Belle Vie, petitioner's nail salon business; (2) whether petitioner is liable for the section 6662(a) penalty for 1999 for the underpayment attributable to unsubstantiated deductions; (3) whether petitioner is liable for the civil fraud penalty pursuant to section 6663 for a portion of the 1999 deficiency and the entire 2000 and 2001 deficiencies; (4) whether, in the alternative, if petitioner is found not to be liable for the civil fraud penalty pursuant to section 6663 on any portion of the underpayment for any of the years in issue, petitioner is liable for the accuracy-related penalty on such portion of the underpayment pursuant to section 6662.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The parties stipulated that petitioner received small amounts of interest and dividend income in each of the 3 years at issue that were not reported on petitioner's income tax returns. The parties also stipulated that petitioner incurred a $30 capital loss in 2001 that petitioner did not report on her 2001 income tax return. In her briefs, petitioner concedes that she cannot substantiate $38,211 in business expenses for 1999.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulations of facts, and the attached exhibits are incorporated herein by this reference. At the time petitioner filed her petition, she resided in Oregon.

General Background

Petitioner was born in Vietnam on December 25, 1953. In 1977, petitioner immigrated to the United States. Petitioner and her 13 living siblings were all born and raised in Vietnam. The numerous members of petitioner's extended family live in Vietnam and various locations in the United States. During 1999, 2000, and 2001, some of petitioner's siblings who still lived in Vietnam were arranging their financial affairs in anticipation of moving to the United States. Petitioner speaks limited English.

Petitioner's Nail Salon Business

During 1999, 2000, and 2001, petitioner operated as a sole proprietorship La Belle Vie, a nail beauty salon in a shopping mall in Oregon. Petitioner opened her first nail salon in Oregon in 1987. Petitioner handled the banking and finances of La Belle Vie, depositing the credit card receipts every day and the cash receipts approximately once a week. Petitioner paid herself a "salary" from La Belle Vie by writing checks to herself from La

Belle Vie bank accounts.  Petitioner also received tips from her work at La Belle Vie during 1999, 2000, and 2001.

Petitioner's Banking and Investment Accounts

During 1999, 2000, and 2001, petitioner maintained bank accounts at both Key Bank and U.S. Bank.  She maintained two checking accounts at Key Bank in her own name.  Petitioner maintained a checking account at U.S. Bank under "La Belle Vie" and a money market account under "Elizabeth T. Lai Sole Prop La Belle Vie".  Petitioner used the Key Bank accounts as her personal accounts and the U.S. Bank accounts as her business accounts.

Petitioner deposited and withdrew money from her personal accounts at Key Bank as follows:

| Year | Cash Deposits | Total Deposits | Withdrawals |
|------|---------------|----------------|-------------|
| 1999 | $85,590.88 | $113,766.37 | $116,275.50 |
| 2000 | 63,300.00 | 94,096.74 | 95,728.48 |
| 2001 | 112,800.00 | 151,145.22 | 135,502.02 |

Petitioner's withdrawals from her personal accounts at Key Bank included payments for home and car loans, utilities, clothes, and other personal expenditures.

Petitioner's Purchase of a Cashier's Check in 2000

On September 29, 2000, petitioner used cash to purchase a cashier's check of $55,204 from U.S. Bank.  Petitioner did not withdraw the $55,204 that she used to purchase the cashier's check from any of her personal or business accounts.  Petitioner

purchased the cashier's check with funds from Gioni Birkenfeld, petitioner's former daughter-in-law and the mother of petitioner's grandchild, and with funds that came indirectly from Hong Lai, petitioner's sister. Gioni Birkenfeld gave petitioner $17,000. Hong Lai, who lived in Vietnam at the time, arranged for several relatives in the United States to give money to petitioner. When those relatives later traveled to Vietnam, Hong Lai repaid them the amounts they paid petitioner, which the relatives would use during their trips in Vietnam.[3] Acting on Hong Lai's behalf, petitioner then used the cash she received from the relatives to pay for the remaining portion of the cashier's check for which Gioni Birkenfeld did not pay.

On October 2, 2000, petitioner purchased a residence in Portland, Oregon, apparently using the cashier's check as a downpayment. Gioni Birkenfeld lived in the residence for 14 months after it was purchased, during which time she assumed responsibility for mortgage payments of approximately $1,500 per month. Hong Lai lived in the residence for a brief period when she arrived in the United States in 2003. The residence was sold in September 2003.

---

[3] A vital factual underpinning of petitioner's actions in this case is her (and her family's) reluctance to transport money--particularly large sums of U.S. dollars--between Vietnam and the United States in ordinary banking transactions. Petitioner and her family apparently feared that Vietnamese officials would seize the money if discovered.

Preparation of Petitioner's Income Tax Returns

Petitioner engaged Thanh Nguyen (Mr. Nguyen), an enrolled agent, to prepare her 1999, 2000, and 2001 Federal income tax returns. Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 1999, 2000, and 2001. Petitioner attached to each of those returns Schedules C, Profit or Loss From Business, reporting the following gross receipts, cost of goods sold, and expenditures for La Belle Vie:

| Year | Gross Receipts | Cost of Goods Sold | Business Deductions | Net Profit |
|------|------|------|------|------|
| 1999 | $428,595 | $63,845 | $331,957 | $31,933 |
| 2000 | 412,763 | 85,618 | 272,495 | 54,650 |
| 2001 | 466,770 | 38,897 | 338,417 | 88,760 |

Petitioner's business records consisted of her bank statements and canceled checks, and the parties agree that Mr. Nguyen prepared the returns based solely on canceled checks and statements from petitioner's U.S. Bank accounts. Petitioner did not inform Mr. Nguyen of her tip income at the time.

Petitioner did not report any of her tip income on her Federal income tax returns for the years at issue. Petitioner did not mention the tip income to Mr. Nguyen because she did not believe that tips were taxable. Indeed, petitioner became aware that tip income was taxable only when she was informed as such by her attorney during preparation for the trial of this case.

Examination of Petitioner's Income Tax Returns

Petitioner's 1999 income tax return was selected by respondent for examination. Revenue Agent Daren Cedergreen (Agent Cedergreen) conducted the examination, which began in 2002.

On February 14, 2002, Agent Cedergreen met with petitioner and Mr. Nguyen, who agreed to represent petitioner during the examination, at La Belle Vie. During that meeting, petitioner stated, inter alia, that all her income came from La Belle Vie, that she did not have a safe deposit box, and that she did not receive any loans during 1999.

On September 23, 2002, Agent Cedergreen met again with petitioner and Mr. Nguyen at Mr. Nguyen's office. During that meeting, petitioner stated that the deposits in her Key Bank accounts represented loan proceeds and loan repayments from family and friends in the United States and Vietnam. Petitioner also said that she maintained a safe deposit box at Key Bank.

At the meeting, petitioner showed Agent Cedergreen seven letters (the first set of letters) that she believed were authored by relatives and acquaintances. The letters, many of which are written in Vietnamese, discuss loans between petitioner and her friends and family made during late 1998 and 1999.

During the meeting of September 23, 2002, petitioner filled out a questionnaire indicating that her routine cash expenditures

for personal items such as groceries, gas for her car, and other needs amounted to $9,760 during 1999.

At some point after this meeting, respondent expanded the scope of the examination to include petitioner's 2000 and 2001 returns.

Agent Cedergreen met with petitioner, Mr. Nguyen, and Bob Bradley (who was also representing petitioner), at respondent's Portland, Oregon, office on August 14, 2003. At this meeting, petitioner again explained that the large deposits into her personal accounts represented loan proceeds and loan repayments from friends and family. Petitioner estimated that she received more than $70,000 in loans in 2000 and more than $120,000 in loans in 2001.

During the meeting of August 14, 2003, Agent Cedergreen questioned petitioner about her purchase of a cashier's check on September 29, 2000. Petitioner initially did not remember that she purchased a cashier's check in 2000 or 2001 and stated that she did not make such a purchase. After further questioning, petitioner recalled that she purchased a cashier's check on behalf of Ms. Birkenfeld for the purpose of purchasing a residence in which Ms. Birkenfeld would live. Petitioner recalled that Ms. Birkenfeld agreed to give the house to Hong Lai when Hong Lai came to the United States.

On or about August 19, 2003, petitioner hired C.P.A. Jerry Levey to help represent her during the examination.

On October 29, 2003, petitioner provided Agent Cedergreen with 50 additional letters (the second set of letters).  The letters indicate that some of petitioner's friends and family in Vietnam sent cash to petitioner for safekeeping or investment in anticipation of their immigration to the United States. According to the letters, friends and family of petitioner who traveled from Vietnam to the United States would deliver the money to petitioner in amounts ranging from $3,000 to $17,000.

Petitioner subsequently discovered that the first set of letters was not written by their purported authors.  Shortly after she received the original letters in the mail, petitioner gave them to her mother to read and store.  When petitioner asked her mother for the letters during the examination of her returns, petitioner's mother could not find them and instead attempted to replicate the originals.  Petitioner's mother attempted to reconstruct the loan amounts mentioned in the letters from memory.  When petitioner learned of her mother's actions, petitioner promptly notified Mr. Levey of her discovery, and petitioner and Mr. Levey subsequently informed respondent that the first set of letters was authored by petitioner's mother. Petitioner maintained at both the audit and at trial that the

content of the second set of letters was authentic and that the letters were written by their purported authors.

At all stages of the examination, progress was significantly hampered by misunderstandings due to language barriers, poor translations, cultural differences between petitioner and respondent's employees, and petitioner's somewhat guarded approach towards government officials. For example, petitioner originally told Agent Cedergreen that she did not receive any loans during 1999 despite the fact that she simultaneously volunteered the existence of her Key Bank accounts which contained significant, unexplained deposits which she would later attribute to intrafamily loans. At subsequent meetings, petitioner offered Agent Cedergreen detailed information on several loan transactions, apparently without believing that the information contradicted her previous statements.

The Notice of Deficiency

In a notice of deficiency dated October 5, 2004, respondent determined deficiencies and penalties as stated supra. Aside from those adjustments which the parties have conceded, the deficiencies are composed of four elements: (1) Inclusion of petitioner's additional bank deposits as unreported income for each year; (2) inclusion of $9,760 of cash income for each year; (3) inclusion of the amount of the cash used to purchase the cashier's check in gross income for 2000; and (4) adjustments to

petitioner's reported itemized deductions, personal exemptions, self-employment tax, and child tax credit.

For all 3 years at issue, respondent conducted a bank deposit analysis to determine the total deposits in petitioner's business and personal bank accounts. Respondent excluded deposits that, in his determination, represented nontaxable sources, including transfers between petitioner's accounts. Respondent determined that the remaining amount was taxable income.

Respondent added $9,760 of income to petitioner's reported adjusted gross income for each year. According to respondent, this figure represented the amount of petitioner's annual cash expenditures for personal expenses based on the form petitioner filled out at her meeting with Agent Cedergreen on September 23, 2002. Because petitioner withdrew nearly zero cash from her personal and business accounts during 1999, 2000, and 2001,[4] respondent determined that the $9,760 represented additional income.

For 2000, respondent determined $55,204 of additional income. That amount reflects petitioner's cash purchase of the cashier's check discussed supra. Because petitioner did not withdraw cash from any of her bank accounts to provide the funds

---

[4] Petitioner wrote one check to cash in 1999 in the amount of $3,500. Respondent accordingly reduced his deficiency determination by that amount for 1999.

used to purchase the cashier's check, respondent determined that the cash petitioner used to purchase the cashier's check was unreported income.

Finally, respondent adjusted the amounts of petitioner's reported itemized deductions, personal exemptions, self-employment tax, and child tax credit in accordance with the above determinations.

## OPINION

### Deficiencies

Generally, the Commissioner's determinations of deficiencies in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing that the Commissioner's determinations are in error.  See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[5]  The U.S. Court of Appeals for the Ninth Circuit (to which an appeal of this matter would lie) has held that the Commissioner must establish "some evidentiary foundation" connecting the taxpayer with the income-producing activity, Weimerskirch v. Commissioner, 596 F.2d 358, 361-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977), or demonstrate that the taxpayer actually received unreported income, see Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982) (the

---

[5]  Petitioner has neither claimed nor shown that she satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent with regard to any factual issue affecting her liability for the income tax deficiencies.  Accordingly, petitioner bears the burden of proof.  See Rule 142(a).

Commissioner's assertion of a deficiency is presumptively correct once some substantive evidence is introduced demonstrating that the taxpayer received unreported income), for the presumption of correctness to attach to the deficiency determination in unreported income cases. If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer to show by a preponderance of the evidence that the deficiency was arbitrary or erroneous. See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97.

The Commissioner has broad powers under section 446 to compute the taxable income of a taxpayer. Sec. 446; Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989). Generally, such computation is made using the taxpayer's regularly employed method of accounting. Sec. 446(a). If the taxpayer's method of accounting does not clearly reflect income, then the method used shall be the method which, in the Commissioner's opinion, clearly reflects income. Sec. 446(b); see Palmer v. U.S. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997).

"The use of the bank deposit method for computing income has long been sanctioned by the courts." Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). "A bank deposit is prima facie evidence of income and respondent need not prove a likely source of that income."

Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (citing Estate of Mason v. Commissioner, supra at 656-657).

Respondent has introduced adequate evidence to show that petitioner received unreported income during 1999, 2000, and 2001. With regard to respondent's determinations that resulted from respondent's bank deposit analyses, respondent is not required to show a link between petitioner's bank deposits and a likely taxable source of income. See, e.g., Tokarski v. Commissioner, supra; Kudo v. Commissioner, T.C. Memo. 1998-404, affd. 11 Fed. Appx. 864 (9th Cir. 2001). Respondent's determinations regarding the cashier's check and petitioner's cash income are founded on statements from third parties such as banks and brokerage firms, and on petitioner's admissions that she received cash income that she failed to report on her tax returns. Moreover, petitioner's nail salon business clearly qualifies as an income-producing activity. See, e.g., Hamilton v. Commissioner, T.C. Memo. 2004-66 (ownership of interests in businesses sufficient to prove likely source of unreported income). Respondent has therefore introduced adequate substantive evidence to show that petitioner received unreported income in the amounts determined, and, as noted supra, the burden of proof falls on petitioner to demonstrate that respondent's determinations are arbitrary or erroneous.

In addition to her own testimony, petitioner offered testimony from her sisters Hong Lai and Sharon Huynh, and her daughter Victoria Lai Hutchins to support her contention that the deposits into her personal accounts represent loan proceeds and repayments from intrafamily loans. Petitioner also offered the second set of letters that she gave to Agent Cedergreen during the examination of petitioner's 1999, 2000, and 2001 income tax returns.

Petitioner, Hong Lai, Sharon Huynh, Victoria Lai Hutchins all testified that petitioner participated in several intrafamily loans during the years at issue in an effort to help family members establish financial stability as they arrived and settled in the United States. Petitioner testified that she deposited the proceeds of several loans into her personal accounts during the years at issue. Hong Lai, who had indepth knowledge of her extended family's financial affairs, corroborated that several letters from the second set were authentic and that she recognized the handwriting and signatures of her sisters in Vietnam on 31 of the letters.[6] Sharon Hunyh's and petitioner's testimony regarding the letters corroborated Hong Lai's testimony.

---

[6] Although petitioner's witnesses testified that additional letters were authentic, some pertain to loan transactions that occurred in years other than the years at issue.

We decide whether a witness is credible on the basis of objective facts, the reasonableness of the testimony, and the demeanor of the witness. Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), affg. 41 T.C. 593 (1964); Dozier v. Commissioner, T.C. Memo. 2000-255. Having had the opportunity to observe the above-mentioned witnesses at trial, we find petitioner, Hong Lai, Sharon Huynh, and Victoria Lai Hutchins to be honest, forthright, and credible. Based on this testimony and the 31 letters from the second set of letters, we find that petitioner deposited proceeds she received from intrafamily loans into her personal accounts as follows:

| Year | Amount Deposited |
|------|------------------|
| 1999 | $74,500 |
| 2000 | 68,800 |
| 2001 | 74,000 |

The above-mentioned amounts are loan proceeds. Loan proceeds do not constitute income to a taxpayer. Commissioner v. Tufts, 461 U.S. 300, 307 (1983). We therefore hold that the above-mentioned amounts are not income to petitioner.

Moreover, the record establishes that the cash petitioner used to purchase the cashier's check in 2000 did not represent unreported income to petitioner. We find the testimony of Hong Lai, Gioni Birkenfeld, and petitioner credible with regard to the cashier's check, and we believe that petitioner used funds that

Hong Lai and Gioni Birkenfeld lent to petitioner to purchase the cashier's check on their behalf.  As noted supra, loan proceeds do not constitute income to a taxpayer.  Id.  We therefore hold that the amount of the cashier's check does not represent income to petitioner.[7]

Based on the credible documentary evidence and credible corroborating testimony, petitioner has established by a preponderance of the evidence that a portion of the disputed determinations is erroneous.  However, petitioner has not carried her burden of proof with regard to the remaining portion of the deficiency.  We therefore partially uphold respondent's determination.

---

[7] Generally, the Commissioner may assess taxes only within 3 years after a taxpayer files his or her income tax return. Sec. 6501(a).  However, if a taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the Commissioner may assess income taxes for that year at any time within 6 years after the return was filed.  Sec. 6501(e)(1)(A). In the matter before us, the notice of deficiency was issued on Oct. 5, 2004.  Petitioner filed her 1999 income tax return on or about Oct. 20, 2000.  Thus, without regard to application of the sec. 6663 fraud penalty, discussed infra, unless sec. 6501(e) applies, that year falls outside the period of limitations, and respondent may not assess additional tax for 1999.  It appears that the 6-year period of sec. 6501(e) may not apply to petitioner's 1999 tax year.  See sec. 6501(e)(1)(A)(i).  If, pursuant to the parties' Rule 155 calculations, sec. 6501(e) does not apply to petitioner's 1999 tax year, respondent may not assess additional taxes for 1999.  Sec. 6501(a).

Penalties

A. Section 6663

Section 6663 imposes a penalty equal to 75 percent of the portion of any underpayment which is attributable to fraud. Sec. 6663(a). The penalty in the case of fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Fraud is intentional wrongdoing on the part of the taxpayer with the specific purpose to evade a tax believed to be owing. McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975).

The Commissioner has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy this burden, the Commissioner must show: (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990). The Commissioner must meet this burden through affirmative evidence because fraud is never imputed or presumed. Petzoldt v. Commissioner, 92 T.C. at 699; Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988); Beaver v. Commissioner, 55 T.C. 85, 92 (1970).

The Commissioner must prove that a portion of the underpayment for each taxable year in issue was due to fraud. Profl. Servs. v. Commissioner, 79 T.C. 888, 930 (1982). If the Commissioner establishes that any portion of an underpayment in a particular year is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud. Sec. 6663(b).

The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978).

Respondent has failed to meet his heavy burden of establishing by clear and convincing evidence that petitioner had the requisite fraudulent intent for any of the years at issue. Several aspects of petitioner's conduct are markedly inconsistent with fraudulent intent. At her first meeting with Agent Cedergreen, petitioner voluntarily disclosed the existence of her personal accounts, the very accounts in which respondent alleges that she hid her income. When petitioner discovered that the first set of letters she had presented were not originals, she disclosed that information to respondent. Petitioner also freely disclosed her unreported tip income and that she had cash

expenditures for personal expenses even though she had nearly zero cash withdrawals from her bank accounts. In effect, petitioner consistently drew respondent's attention to those areas in which her explanations were less than satisfactory. Such behavior is hardly consistent with intent "to conceal, mislead, or otherwise prevent the collection of taxes". Katz v. Commissioner, 90 T.C. 1130, 1143 (1988).

Petitioner contradicted herself on a few occasions during the examination and at trial. However, having had the opportunity to observe petitioner as a witness at trial, and considering that many of her contradictions and disclosures could not have advanced her cause, we do not attribute petitioner's contradictions to fraudulent intent. Rather, we attribute them to a series of misunderstandings and to petitioner's fear of governmental attention due to negative experiences with foreign governments.

Finally, and most importantly, the evidence before us is sufficiently credible to convince us that petitioner did actually participate in the kind of intrafamily transactions which would explain the deposits in her personal accounts, though the record is not sufficiently detailed to establish that all of the deposits into petitioner's personal accounts represent proceeds from such transactions. We therefore do not sustain respondent's imposition of the section 6663 penalty.

B.  Burden of Production

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties.  "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount."  Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner has done so, the burden of proof is upon the taxpayer to establish reasonable cause and good faith.  Higbee v. Commissioner, supra at 449.

C.  Section 6662(a)

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations.  Sec. 6662(b).  The term "understatement" means the excess of the amount of tax required to be shown on a return over the amount of tax imposed which is shown on the return, reduced by any rebate (within the meaning of section 6211(b)(2)).  Sec. 6662(d)(2)(A).  Generally, an understatement is a "substantial understatement" when the understatement exceeds the greater of $5,000 or 10 percent of the amount of tax required to be shown on the return.

Sec. 6662(d)(1)(A).  The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code.  Sec. 6662(c).  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Failure to keep adequate records may be evidence not only of negligence, but also of intentional disregard of regulations.  See sec. 1.6662-3(b)(1) and (2), Income Tax Regs.; see also Benson v. Commissioner, T.C. Memo. 2007-113.

In the matter before us, respondent has met the burden of production imposed on him by section 7491(c).  Respondent has shown that petitioner failed to keep adequate records for the years at issue.  To avoid application of the penalty, petitioner must therefore demonstrate that the underpayments of tax for 1999, 2000, and 2001 were due to reasonable cause and good faith.  See sec. 6664(c)(1); Higbee v. Commissioner, supra at 449.

The decision as to whether a taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Relevant factors include the taxpayer's efforts to assess his or her

proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant.  See id.  However, reliance on the advice of a professional tax advisor does not necessarily establish reasonable cause and good faith.  Id.  Particularly, reliance on the advice of a tax professional is not reasonable when a taxpayer fails to disclose a fact that he or she knows, or reasonably should know, is relevant to the proper tax treatment of an item.  Sec. 1.6664-4(c)(1)(i), Income Tax Regs.

Petitioner has not demonstrated that any of her underpayments are due to reasonable cause and good faith. Petitioner did not mention her tip income to Mr. Nguyen during his preparation of petitioner's income tax returns.  Although petitioner may have believed that tip income was not taxable, that belief is not reasonable.  Petitioner has failed to demonstrate that she acted with reasonable cause and good faith with regard to any particular portion of the underpayments in this case.  Therefore, to the extent that we uphold respondent's determination of deficiencies for the years at issue, we conclude that petitioner is liable for the section 6662(a) penalties.

To reflect the foregoing,

Decision will be entered

under Rule 155.