T.C. Summary Opinion 2010-71


UNITED STATES TAX COURT


ISSA K. SHOKEH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 29666-08S.              Filed June 9, 2010.


Issa K. Shokeh, pro se.

<u>Jon D. Feldhammer</u>, for respondent.


LARO, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

---

[1]Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $8,746 deficiency in petitioner's 2005 Federal income tax and a $1,749 accuracy-related penalty under section 6662(a). The issues for decision are whether petitioner: (1) Failed to include $1,503 of a State income tax refund in his gross income, (2) may deduct $40,665 in expenses reported on his amended 2005 Schedule C, Profit or Loss From Business (Sole Proprietorship), and (3) is liable for the accuracy-related penalty.

## Background

### I. Preliminaries

Some facts were stipulated and are so found. The stipulated facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in California when he filed his petition. He filed a 2005 Form 1040, U.S. Individual Income Tax Return (2005 return). He later filed an amended 2005 return (amended 2005 return) in July 2007.

### II. Petitioner's Employment

#### A. Full-time Occupation

Petitioner has a college degree in engineering, and he worked in and around San Jose, California, as an engineer during 2005. He was a full-time employee during that year, and his employer paid him a salary of $120,556.

B.  Claimed Second Occupation

Petitioner claims for 2005 that he also was a self-employed consultant.  He claims that his consulting business for 2005 consisted primarily of keeping track of the payroll, current orders, and sales tax information for two clients, ToolBar, Inc. (ToolBar), and Service Island, Inc. (Service Island).[2]  He claims that he operated his consulting business out of his home in Milpitas, California, and that his consulting business required that he travel twice a month to his clients' location in Escondido, California.  Escondido, California, is a city in San Diego County, and the business addresses of ToolBar and Service Island were practically next to each other.  The distance from petitioner's home to those business addresses is 450 miles.

III.  ToolBar and Service Island

A.  ToolBar

Petitioner and two other individuals formed ToolBar in 2004, and petitioner had a significant (and apparently controlling) ownership interest in ToolBar during 2005.  ToolBar operated as Precision Tune Auto Care.

---

[2]We herein use the words "business" and "clients" to refer respectively to petitioner's claimed consulting business and to petitioner's relationship with ToolBar and Service Island.  We use those words for convenience and neither find nor mean to suggest that petitioner actually had a consulting business or that either referenced entity was actually petitioner's client.

B. <u>Service Island</u>

Petitioner had no ownership interest in Service Island during 2005.  He acquired a one-third ownership interest in 2006.  The record does not reveal the nature of Service Island's business or whether that business was operating during 2005.

IV. <u>Petitioner's 2005 Return</u>

A. <u>Overview</u>

Petitioner reported on his 2005 return that his gross income included his $120,556 salary, $5,656 of a $7,159 State income tax refund, a $3,000 capital loss, and a $46,643 loss from a sole proprietorship.  His amended 2005 return reported $21 of interest income that was not reported on the 2005 return, and it reported that the sole proprietorship's loss was actually $40,665.

B. <u>Petitioner's Schedule C</u>

1. <u>Overview</u>

Petitioner's 2005 return included a Schedule C that reported that petitioner owned a sole proprietorship with $46,643 of expenses and no gross income.  The Schedule C listed that "service" and "repair and maintenance of automobiles" was the business of the sole proprietorship and that "Toolbar, Inc." was the sole proprietorship's name.  The Schedule C listed the sole proprietorship's business address as a post office box in San Jose that petitioner reported on his 2005 return was his personal

address.  The Schedule C broke down the $46,643 of expenses as follows:

| Expenses | Amount |
|---|---|
| Car and truck expense | $17,515 |
| Depreciation | 450 |
| Other interest | 8,500 |
| Legal and professional services | 500 |
| Office expense | 100 |
| Repairs and maintenance | 4,000 |
| Supplies | 500 |
| Travel | 2,000 |
| Meals and entertainment | 270 |
| Utilities | 2,000 |
| Business use of home | 10,808 |
| Total | 46,643 |

Petitioner's amended 2005 return included an amended Schedule C.  The amended Schedule C reported the same list of expenses reported on the original Schedule C but stated that the amounts of expenses for car and truck and business use of home were $9,720 and $12,625, respectively.  The amended Schedule C listed "Business Services" and "repair and maintenance of automobiles" as the businesses of the sole proprietorship and "Issa K Shokeh" as the sole proprietorship's name.  The amended 2005 return listed the sole proprietorship's business address as the same post office box listed on the 2005 return.

### 2.  Car and Truck Expenses

Petitioner claimed the car and truck expenses for travel from his home to San Diego County.  Petitioner's brother moved to San Diego County in 2005, and during that year petitioner regularly traveled to San Diego County, taking either his

children or another person with him. Petitioner knew that 450 miles was the distance between his home and the Escondido business addresses, but he consciously used 500 miles to calculate the car and truck expenses he reported on both his 2005 return and on his 2005 amended return. Petitioner initially claimed that he drove back and forth between those locations 3 times each month during 2005 (or a total of 36 times), and one exhibit in this case is a rudimentary "mileage log" that petitioner prepared to support that claim. Petitioner now claims (inconsistently with his "mileage log") that he went back and forth to San Diego County only twice a month (or a total of 24 times). Petitioner's amended 2005 return states that his business mileage was 24,000 (i.e., 24 trips at 1,000 miles round trip) and that his resulting deduction (on the basis of a standard mileage rate of 40.5 cents per mile) was $9,720.

### 3. Business Use of Home

Petitioner claimed his "Business Use of Home" expenses for some of his home expenses. For most of 2005, petitioner lived in his home with his mother, his two children, his niece, and his nephew. The home is 2,400 square feet, and one room in the house is 600 square feet. Petitioner calculated his business use of home deductions on the basis of those numbers.

Petitioner reported on his 2005 tax return that his expenses for business use of home totaled $10,808, and he reported on his

amended 2005 return that those expenses totaled $12,625. The difference between these amounts is attributable to petitioner's claim in the amended 2005 return that his deductible mortgage interest was $1,817 higher than initially reported.

### 4. Travel Expenses

For 13 months beginning on April 1, 2004, petitioner and ToolBar rented an apartment in San Diego at a monthly rent of $1,055. Petitioner included that rent in the $2,000 he deducted as travel expenses.

### 5. Other Expenses

The record contains no evidence as to the other expenses that petitioner reported on Schedule C. Those other expenses are other interest, repairs and maintenance, utilities, legal and professional services, supplies, depreciation, office expense, and meals and entertainment.

### Discussion

## I. Burden of Proof on Tax Liability

The Commissioner's deficiency determination is presumed correct, and taxpayers generally bear the burden of proving otherwise in order to prevail. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). In addition, an individual taxpayer generally bears the burden of "clearly showing the right" to any deduction that he or she claims. See Interstate Transit Lines v. Commissioner, 319 U.S. 590, 593 (1943). If an

individual taxpayer meets certain requirements, the burden of proof may shift to the Commissioner as to factual issues relevant to ascertaining the taxpayer's income tax liability. See sec. 7491(a). Petitioner does not argue (nor do we find) that he meets the requirements under section 7491(a) for a shifting of the burden of proof. We conclude that petitioner has the burden of proof.

## II. State Income Tax Refund

Petitioner does not dispute that he received a $7,159 State income tax refund. He argues that $1,503 of the refund is not taxable to him because he never received a tax benefit from the $1,503. Petitioner relies upon a worksheet which shows his calculation that only $5,656 of the $7,159 is taxable to him. The worksheet, however, shows a clear error in petitioner's calculation. When we correct this error, we find that the full $7,159 is taxable to petitioner. We sustain respondent's determination of the same.

## III. Schedule C Expenses

Respondent determined that petitioner did not operate a consulting business during the subject year. We agree. While section 162 generally lets a taxpayer deduct the ordinary and necessary expenses of a consulting business that he operated during 2005, we are unable to find in the limited record before us that petitioner had a consulting business during 2005.

Petitioner essentially relies upon his testimony and two exhibits to support his claim that he had a consulting business during 2005. The first exhibit purports to be a "Contract" between petitioner and ToolBar, stating that petitioner will provide certain services to ToolBar for an undisclosed term in exchange for "a fee not to exceed $10,000 per year". The second exhibit purports to be a "Consulting Agreement" between petitioner and Service Island, stating that petitioner will provide certain services to Service Island for a 5-year term beginning January 1, 2005, in exchange for $10,000 per year.

We are unpersuaded by petitioner's testimony and by the referenced exhibits. His testimony was limited and vague. The exhibits are unreliable. The exhibits, while claimed to be bona fide agreements between petitioner and his related (and apparently controlled) entities, are not indicative of agreements that would be entered into by persons acting at arm's length. In fact, neither "agreement" sets forth a provision under which petitioner's compensation would be ascertained on the basis of the quantity or quality of the services that he actually performed for the entities. The "agreements" simply state that petitioner will receive set payments for the entire year, payments in the total which cannot exceed an average of approximately $385 a week. Moreover, neither "agreement" appears to be signed by an officer or employee of ToolBar or Service

Island. We also note that petitioner did not receive any payments under the "agreements" during 2005 and that, even if he did receive the maximum amount payable under the "agreements", he would have realized a substantial loss from his claimed consulting business.

Nor do the other facts support a conclusion that petitioner actually had a consulting business during 2005. First, petitioner reported no Schedule C income for 2005, and he admitted during his testimony that he did not intend to receive any income from the "agreements" during 2005. We also do not find that petitioner even billed the entities for any consulting services that he performed during 2005, let alone that he performed any such services in the first place. Second, we find in the record no reliable documentation that ordinarily would be kept by a bona fide business. Such documentation, at a minimum, would include documentation of the time that petitioner spent consulting pursuant to the "agreements" and accurate documentation of at least some business expenses. Third, petitioner worked full time as an engineer, and he traveled to San Diego County, the home of his brother, many times with his children. Petitioner has not explained why he would have to travel to San Diego County so often on business or, if he did, why he would have to bring his children with him. Fourth, petitioner reported the Schedule C expenses on his 2005 return as

if those expenses were incurred in ToolBar's business (rather than in a business of his).  Fifth, petitioner's claimed consulting business had no established physical location or any clients other than the two related entities.

We sustain respondent's determination that petitioner is not entitled to deduct any of his claimed Schedule C expenses for 2005.

IV.  Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a).  Section 6662(a) and (b)(1) imposes a 20-percent accuracy-related penalty on the portion of an underpayment of tax attributable to negligence or disregard of rules or regulations.  Negligence connotes a lack of due care or failure to do what a reasonable and prudent person would do under the circumstances.  See Allen v. Commissioner, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348 (9th Cir. 1991).  An accuracy-related penalty shall not be imposed on any portion of an underpayment for which the taxpayer had reasonable cause and acted in good faith with respect thereto.  See sec. 6664(c)(1).

Respondent bears the burden of production with respect to the applicability of the accuracy-related penalty.  See sec. 7491(c).  That burden requires that respondent produce sufficient evidence that it is appropriate to impose the accuracy-related penalty.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Once respondent meets this burden, the burden of proof falls upon petitioner. See id. at 447. Petitioner may carry his burden by proving he was not negligent and did not act carelessly, recklessly, or in intentional disregard of rules or regulations. See sec. 6662(c). Alternatively, petitioner may establish that his underpayment was attributable to reasonable cause and his acting in good faith. See sec. 6664(c)(1).

Respondent has met his burden of production in that the record establishes that petitioner understated his gross income through, in part, his claim to undocumented (and sometimes intentionally inflated) Schedule C expenses for a fictitious business. Petitioner argues that he should not be liable for the accuracy-related penalty because he relied upon the advice of his accountant. We are unpersuaded. Although reliance on the advice of a professional as to the tax treatment of an item may sometimes be enough to escape the imposition of a section 6662(a) accuracy-related penalty, see United States v. Boyle, 469 U.S. 241, 250 (1985); sec. 1.6664-4(b), Income Tax Regs., individual taxpayers relying upon this exception must prove by a preponderance of evidence that: (1) The adviser was a competent professional who had sufficient expertise to justify reliance; (2) the taxpayer provided necessary and accurate information to the adviser; and (3) the taxpayer actually relied in good faith on the adviser's judgment, see Neonatology Associates, P.A. v.

<u>Commissioner</u>, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002).  On the basis of the record at hand, we are unable to conclude that any of these requirements has been met.  We sustain respondent's determination as to the accuracy-related penalty.

V.    <u>Conclusion</u>

We have considered all arguments made by the parties and, to the extent not discussed above, conclude they are without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.