T.C. Summary Opinion 2010-169

UNITED STATES TAX COURT

ESTRELLA A. LUMABAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16652-09S.              Filed November 3, 2010.

Keith S. Blair, Curtis E. Tatum, and Gerald Loiacono
(student), for petitioner.

Jonathan Hauck and Tyler N. Orlowski, for respondent.

GOLDBERG, Special Trial Judge:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  Pursuant to section
7463(b), the decision to be entered is not reviewable by any
other court, and this opinion shall not be treated as precedent
for any other case.  Unless otherwise indicated, subsequent
section references are to the Internal Revenue Code (Code) in

effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes of $2,744, $5,989, and $4,731 and section 6662(a) accuracy-related penalties of $549, $1,198, and $946 for 2005, 2006, and 2007, respectively. After concessions,[1] the issues for decision are: (1) Whether petitioner's salary for 2005 from the Baltimore County, Maryland, Public Schools (BCPS), for 2006 from BCPS and the Prince George's County, Maryland, Public Schools (PGCS), and a portion of 2007 from PGCS[2] are exempt from Federal income tax under the Convention With Respect to Taxes on Income, U.S.-Phil., art. 21, Oct. 1, 1976, 34 U.S.T. 1277 (article 21); (2) whether petitioner is entitled to certain itemized deductions for 2006 and 2007; and (3) whether petitioner is liable for the accuracy-related penalty under section 6662(a) for the 3 years at issue.

---

[1]Respondent's notice of deficiency for 2005 and 2006 determined that petitioner failed to include a $258 State income tax refund in her 2006 gross income. Respondent's notice of deficiency for 2007 determined that petitioner's filing status was incorrect. Petitioner did not address these issues in her petition or at trial; therefore, the issues are deemed conceded. See Rules 34(b), 149(b).

[2]The parties stipulated that should petitioner's income be found to be exempt under article 21, the exemption would also apply to January 1, 2007, through June 21, 2007, even though petitioner reported all of her income in 2007 on her Federal tax return and there was no determination in the notice of deficiency for 2007 concerning her income from that year.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Maryland when she filed her petition.

Petitioner is a citizen of the Republic of the Philippines. She received a bachelor's degree in English from the University of the East. She received a master's degree in administration from the University of Perpetual Help. Petitioner also completed postbaccalaureate classes in special education and leadership. Both of the institutions petitioner attended are in the Philippines. Petitioner began teaching at Bacoor National High School in Bacoor, Cavite, Philippines, and Cavite School of St. Mark's School for Girls in 1983. Her ending monthly salary in 2005 from teaching was 15,000 pesos, equivalent to $268.

Amity Institute (Amity) is a nonprofit organization the United States Department of State (the State Department) approved to operate an exchange teacher program. The exchange teacher program allows qualified foreign teachers to enter the United States to teach for up to 3 years. Amity does not directly recruit teachers from the Philippines. During 2004 and 2005 Amity worked with Badilla Corp. (Badilla), a business entity from the Philippines, and with Avenida & Associates, Inc. (Avenida), a business entity from the United States. Badilla and Avenida are

affiliated entities that worked together to facilitate the placement of qualified Filipino teachers in American schools. Badilla collected background information such as transcripts and résumés from teachers in the Philippines who were interested in the teacher exchange program in the United States. Badilla found its prospective Filipino teachers principally by word of mouth and seminars conducted by its executives. Avenida or Badilla charged placement fees and additional charges to help teaching candidates with, among other tasks, finding employers in the United States and obtaining visas. The fees were: A $3,200 placement fee, a $725 U.S. documentation fee, a $500 J-1 visa fee, and $775 for airfare and travel. In the United States, Avenida helped school districts find promising teaching candidates by providing access to a database of overseas jobseekers. In 2004 petitioner attended an orientation session for an exchange teacher program Badilla sponsored, at which time she submitted her application and résumé.

Dr. Donald A. Peccia joined BCPS in October 2004 as the assistant superintendent of human resources, a position he retained through the date of trial. As of the date of trial, Dr. Peccia's department employed 71 people who were responsible for the recruitment, retention, and rewarding of the school system's 17,000 full-time and thousands of part-time and temporary employees, working in over 170 schools.

To meet a shortfall in teachers, Dr. Peccia initiated the idea of BCPS' recruiting internationally, beginning with a small "pilot-type program" in the Philippines. In a letter dated January 28, 2005, Dr. Peccia contacted Avenida stating that BCPS would like to hire 12 or more qualified Filipino teachers. From a preselected group of Filipino teachers, BCPS administrators chose the candidates that the school system wanted to interview.

In March 2005 Herman James and Joyce Reier, personnel officers for BCPS, traveled to the Philippines to interview teaching candidates. Ms. Reier interviewed petitioner. Mr. James and Ms. Reier coordinated with Dr. Peccia, and they agreed to hire 20 teachers from the Philippines. On March 10, 2005, BCPS offered petitioner a position for the 2005-2006 school year, and petitioner signed a preliminary contract with BCPS. Petitioner "understood" that BCPS would be evaluating her performance throughout the school year. If petitioner's performance was satisfactory, BCPS would continue her employment for the following school year.

Generally, foreign teachers who want to teach in the United States may obtain one of two types of visas. One is the H-1B visa for working professionals. The second is the J-1 visa for individuals coming to the United States under a cultural exchange program approved by the State Department. The J-1 visa is more convenient for foreign individuals who are new teachers in the

United States because the visa timing coincides with the academic school year in the United States.

Badilla referred petitioner to Amity who in turn sponsored petitioner's J-1 visa. The State Department authorized Amity to issue Form DS-2019, Certificate of Eligibility for Exchange Visitor (J-1) Status. The form identifies the visitor; identifies the visa sponsor; briefly describes the exchange program, including the start and end dates; identifies the category of exchange; and states the estimated cost of the exchange program. In 2005 the cost of the exchange teacher program was $3,000. At all relevant times Gertrude Hermann was Amity's executive director.

Badilla invited petitioner and the other teachers who had received employment offers from BCPS to meet at Badilla's office in the Philippines on June 14, 2005. At the meeting Badilla provided many completed forms that each teacher needed to sign, including an administrative fee agreement, Amity's exchange teacher program contract, and a Form DS-2019. The length of time listed on the Form DS-2019 was 3 years, the same length as the exchange teacher program. Badilla reiterated that BCPS required satisfactory performance to continue employment beyond the first year. Petitioner signed the forms and returned them to Badilla for processing.

Petitioner entered the United States on July 29, 2005. She signed a standard State-issued Provisional Contract for Conditional or Resident Teacher Certificate Holders (BCPS employment contract) on August 9, 2005, effective beginning August 22, 2005. The BCPS employment contract was for 1 year, terminating automatically at the end of the 2005-2006 school year. BCPS assigned petitioner to teach secondary science at General John Stricker Middle School (Stricker).

Under the exchange teacher program, petitioner's family could not join her in the United States until she received a satisfactory evaluation from BCPS. Therefore, the earliest petitioner's family could join her was at the end of the 2005-2006 school year. During the years at issue and up to the time of trial, petitioner was married and had two children. Although petitioner's family visited with her in the United States, they did not move to the United States and at the time of trial still resided in the Philippines.

When petitioner first arrived in the United States, she lived in a house provided to Filipino teachers who moved to Baltimore County to teach for BCPS. The house was owned by Mr. and Mrs. Encoienda. Petitioner stayed at the house for approximately 2 weeks. After leaving the house, petitioner signed a 1-year lease with Charlesmont Apartments.

On March 29, 2006, petitioner received an "unsatisfactory" evaluation from her principal. In a letter dated April 27, 2006, BCPS informed petitioner that "your contract will not be renewed for the school year 2006-2007".

At the completion of the 2005-2006 school year, instead of returning to the Philippines, petitioner visited her sister in Los Angeles, California. While visiting her sister, petitioner learned that PGCS was hiring teachers for the 2006-2007 school year. Petitioner applied for a position with PGCS and accepted an offer to teach secondary science at Martin Luther King, Jr. Middle School. At the time of trial she was still employed by PGCS.

Working in the United States provided petitioner with a salary that was considerably greater than the salary she earned in the Philippines, which as described supra page 3 was $268 a month or $3,216 annually. Petitioner's starting annual salary at BCPS was $56,149. With respect to Federal income tax withholding, petitioner did not provide BCPS or PGCS with Form 8233, Exemption From Withholding on Compensation for Independent (and Certain Dependent) Personal Services of a Nonresident Alien Individual. Consequently, BCPS and PGCS withheld Federal income tax from petitioner's salary during 2005, 2006, and 2007.

Petitioner engaged a certain U.S. enrolled agent, Fred R. Pacheco, to prepare her 2005, 2006, and 2007 Federal income tax

returns. She filed Forms 1040NR, U.S. Nonresident Alien Income Tax Return, for 2005 and 2006. She filed Form 1040, U.S. Individual Income Tax Return, for 2007. Petitioner did not report her salary from BCPS or from PGCS on her 2005 or 2006 return. Petitioner reported all of her salary for 2007 on her 2007 return. Petitioner did not tell Mr. Pacheco how long she expected to stay in the United States.

Petitioner claimed itemized deductions of $19,073 and $16,619 for 2006 and 2007, respectively. The 2006 itemized deductions consisted of $3,153 for State income taxes withheld, $12 for charitable contributions, and $15,908 for unreimbursed employee expenses. The 2007 itemized deductions consisted of $4,249 in State income tax withheld, $12,270 in unreimbursed employee business expenses, and $100 in tax preparation fees. As a result of the income exclusion, income tax withholding, and itemized deductions, petitioner requested refunds of $4,678, $6,530, and $3,526 for 2005, 2006, and 2007, respectively.

The Internal Revenue Service (IRS) selected petitioner's 2005, 2006, and 2007 Federal income tax returns for examination. The IRS sent petitioner two notices of deficiency dated March 26, 2009. In the notice pertaining to 2005 and 2006, the IRS adjusted petitioner's income to include the earnings from BCPS and PGCS for 2005 and 2006 that petitioner had excluded under article 21. The notice also disallowed $15,858 of the $19,073 in

itemized deductions that she claimed for 2006. In the notice pertaining to 2007, the IRS disallowed $12,270 of the $16,619 in itemized deductions that petitioner claimed for 2007. Petitioner filed her petition contesting all of respondent's adjustments.

Respondent moved under Rule 121 for partial summary judgment, contending that no issue of material fact existed as to whether petitioner's income for the years at issue qualified for exemption under article 21. Petitioner objected to the granting of the motion. Both parties fully briefed the issue of income exemption under article 21. The Court set the motion for hearing at trial. When the case was called for trial, the Court heard the motion. The parties relied on the respective positions they had set forth in their briefs. The Court has denied respondent's motion for partial summary judgment.

Shortly before trial, petitioner filed a motion to exclude the testimony of Dr. Peccia on the grounds of hearsay, lack of personal knowledge, and relevance. Respondent objected to the motion. The Court heard arguments on the motion at trial and took the motion under advisement. The Court has denied petitioner's motion. The case was then tried, and the Court heard testimony from petitioner, Dr. Peccia, and Ms. Hermann.

## Discussion

### I.  Income Under Article 21

Petitioner was a nonresident alien for the years at issue because of her J-1 visa status and her participation in the exchange teacher program.  See sec. 7701(b).  In particular, section 7701(b)(1)(B) provides that a nonresident alien is a person who is not a citizen or resident of the United States within the meaning of section 7701(b)(1)(A).[3]  Generally, a nonresident alien individual engaged in trade or business within the United States is taxed on the taxable income effectively connected with that trade or business.  Sec. 871(b).  The phrase "trade or business within the United States" generally includes the performance of personal services within the United States at any time within the taxable year.  Sec. 864(b).  Compensation paid to a nonresident alien in exchange for the performance of services in the United States constitutes income that is effectively connected with the conduct of trade or business in the United States.  Sec. 1.864-4(c)(6)(ii), Income Tax Regs. Consequently, petitioner's wages would ordinarily be included in gross income under the Code.  Section 894(a), however, provides that the provisions of the Code will be applied to any taxpayer

---

[3]As a teacher, petitioner is considered an exempt individual and, therefore, not treated as present for purposes of the substantial presence test.  See sec. 7701(b)(1)(A)(ii), (3)(D)(i), (5)(A)(ii).

with due regard to any treaty obligations of the United States that apply to the taxpayer. Therefore, the treatment of petitioner's wages might be altered by applicable treaty provisions. See id.

The United States is a party to an income tax convention with the Republic of the Philippines. The convention provides an exemption from U.S. income taxation on income earned by Filipino teachers teaching in the United States if the requirements of the convention are satisfied. Article 21 states:

### Article 21
#### TEACHERS

(1) Where a resident of one of the Contracting States is invited by the Government of the other Contracting State, a political subdivision or local authority thereof, or by a university or other recognized educational institution in that other Contracting State to come to that other Contracting State for a period not expected to exceed 2 years for the purpose of teaching or engaging in research, or both, at a university or other recognized educational institution and such resident comes to that other Contracting State primarily for such purpose, his income from personal services for teaching or research at such university or educational institution shall be exempt from tax by that other Contracting State for a period not exceeding 2 years from the date of his arrival in that other Contracting State.

To qualify for the exemption under article 21, a taxpayer must meet the following requirements: (1) The taxpayer was a resident of the Philippines before coming to the United States; (2) she was invited by the Government or a recognized educational institution within the United States; (3) she was invited for a

period not expected to exceed 2 years; (4) the purpose of the invitation was for her to teach or engage in research at the recognized educational institution; and (5) she did in fact come to the United States primarily to carry out the purpose of the invitation. The taxpayer must meet all of the requirements to qualify for the income exemption.

The only requirement in dispute is whether petitioner's invitation to teach in the United States was "for a period not expected to exceed 2 years". The text of article 21 does not specifically state whose expectation controls the length of the invitation to teach for a period not to exceed 2 years. Petitioner argues that her expectation as the invitee is the only expectation that matters. Respondent counters that either the expectation of the invitor, BCPS, should be decisive or that the Court should weigh the expectations of all the parties associated with the exchange teacher program. In the light of this ambiguity in the text of article 21, we will consider all the relevant facts and circumstances, including the expectations of all the parties. See Santos v. Commissioner, 135 T.C. __, __ (2010) (slip op. at 17). We will construe article 21 liberally. See N.W. Life Assurance Co. of Can. v. Commissioner, 107 T.C. 363, 378 (1996). Then we will make an objective determination of whether petitioner was invited to the United States "for a period

not expected to exceed 2 years". See Santos v. Commissioner, supra.

A. Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving that the deficiency is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Furthermore, any deductions allowed are a matter of legislative grace, and the taxpayer bears the burden of proving his entitlement to them. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Under section 7491(a) the burden may shift to the Commissioner regarding factual matters affecting a taxpayer's liability for tax if the taxpayer produces credible evidence and meets other requirements of the section. In her pretrial memorandum, petitioner mentioned that she would move for a burden shift under section 7491(a), contending that she had produced credible evidence and met the other requirements of the section. At trial, petitioner did not make an oral or written motion for a burden shift.

We need not, and we explicitly do not, decide which party bears the burden of proof because as discussed above, applying Santos v. Commissioner, supra, we will decide this case on an

objective consideration of all the relevant facts and circumstances.

B. <u>Analysis</u>

We begin our analysis with a discussion of the evidence that relates to petitioner's expectation. Petitioner's reliance on the 1-year apartment lease and the 1-year BCPS employment contract is unconvincing. One-year apartment leases are commonplace and do little to indicate a tenant's long-term expectation to remain in an area. Likewise, BCPS required all of its first-year teachers to sign the standard State-issued 1-year employment contract. The fact that the contract did not guarantee employment beyond the first year does not mean that petitioner expected to stay in the United States for only 1 year.

The length of petitioner's J-1 visa was 3 years. Petitioner was not asked whether she wanted a different period stated for the length of her J-1 visa, nor did she make it known that she wanted a different period. She simply signed the DS-2019. While it is true that this document did not obligate her to remain in the United States for 3 years, we find it particularly hard to believe that petitioner did not expect to remain in the United States for the duration of the exchange teacher program. Bolstering this conclusion are petitioner's own actions and words.

After her contract was not renewed by BCPS, instead of going home to the Philippines petitioner visited her sister in Los Angeles and began searching for other teaching jobs in Maryland. Petitioner testified that her first year of teaching in the United States had been "rough", and she was devastated when her contract with BCPS was not renewed. She thought that maybe she should return to the Philippines. When questioned as to why she looked for another teaching position in Maryland, petitioner testified that "I would want to stay here in America." Furthermore, petitioner introduced no evidence that she expressed to any of the parties involved that she expected to remain in the United States for a period not expected to exceed 2 years. Similarly, petitioner did not testify that she expected to remain in the United States for a period not to exceed 2 years. Thus, petitioner's actions indicate a strong commitment to staying in the United States for the length of the teacher exchange program despite the difficulties.

Petitioner testified that she received a leave of absence, but she offered no proof of being granted such leave. If petitioner did obtain a leave of absence, it is simply not a decisive factor.

In addition, we cannot ignore the financial incentive of remaining in the United States for as long as possible. Petitioner incurred significant expenses to participate in the

exchange teacher program. These expenditures are not insignificant in comparison to her earnings in the Philippines. Moreover, her earnings immediately grew more than seventeenfold from $3,216 to $56,149 when she moved from the Philippines to the United States. The increase in salary is too large to ignore.

From the perspective of BCPS, the school system absolutely expected that the Filipino teachers would remain for the length of the 3-year exchange teacher program. Dr. Peccia testified that his Department expected the Filipino teachers to remain within the school system for exactly the length of the visa, 3 years. He stated "we had no expectations beyond 3 years and no expectations of less than 3 years." Dr. Peccia explained that "it wouldn't have been worth the investment" including "the cost of the [airline] ticket[s], the cost of all the time people were away". He added that BCPS helped the Filipino teachers with finding housing and with obtaining Social Security cards to ease their physical and psychological transition so that the teachers could focus on teaching. Dr. Peccia noted that only 1 or 2 of the 20 Filipino teachers did not complete the 3-year term. In other words, 90 to 95 percent of the teachers remained in the United States for the full 3 years.

Corroborating this evidence is the testimony of Ms. Hermann, who stated that BCPS, similar to the other school systems that hired foreign teachers through the exchange teacher program,

expected the teachers to stay for the entire 3-year program. She added that it had been Amity's experience that only a small percentage of Filipino teachers returned to the Philippines before completing the 3-year exchange teacher program, and most participants decided to remain in the United States beyond the 3 years. As of the date of trial, petitioner remained in the United States teaching in Maryland. The testimony of these two witnesses is plausible, reliable, and persuasive.

In conclusion, after an objective examination of all of the relevant facts and circumstances, we find that petitioner and BCPS expected petitioner to stay in the United States for at least 3 years, which is greater than the "not expected to exceed 2 years" requirement of article 21. Therefore, petitioner's income for June 2005 to June 2007, the first 2 years she was in the United States, is not exempt from Federal income tax under article 21.

II. Disallowed Itemized Deductions

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. The performance of services as an employee is considered a trade or business for section 162 purposes. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). For an expense to be necessary, it must be "appropriate and helpful" to the taxpayer's business. Welch v. Helvering, 290 U.S. at 113-

An expense will be considered ordinary if it is a common or frequent occurrence in the type of business in which the taxpayer is involved. <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940). Taxpayers must maintain records sufficient to substantiate any deductions they claim. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Petitioner's disallowed deductions were all labeled job search costs, and she provided no further delineation for the expenses.

A. <u>2006 Disallowed Unreimbursed Employee Expenses - $15,858</u>

Petitioner's unreimbursed employee expenses deduction is a combination of expenses she paid in 2005 and 2006. On her Schedule A, Itemized Deductions, petitioner entitled the entire amount "job search costs". She paid $5,200 to Avenida in fees and $1,500 of the $3,000 exchange teacher program fee in 2005. The exchange teacher fee was paid out in increments over the 3-year period of the program. Petitioner paid $1,500 of the fee during her first year of the program and made two subsequent annual payments of $750, one in the second year of the program and one in the third. Petitioner had to pay the fees to come to the United States and to continue her participation in the exchange teacher program. Petitioner did not substantiate her $5,200 in J-1 visa fees or her $1,500 payment in 2005 or her $750 payment in 2006, but we are satisfied that petitioner paid these fees in 2005 and 2006 to maintain her standing in the program.

Although petitioner did not claim expenses in 2005, the record shows that she paid a total of $6,700 in fees to participate in the exchange teacher program in 2005. Petitioner also testified to and substantiated a $100 fee paid to the U.S. Department of Justice for a Student and Exchange Visitor Program: SEVIS I-901 Fee. Therefore, petitioner is entitled to a $6,800 deduction for 2005 and a $750 deduction for 2006.

Petitioner provided no breakdown of the expenses and provided no substantiation for the remaining $8,308 of "job search costs" deduction claimed for 2006. Therefore, we sustain respondent's disallowance of this amount.

B. <u>2007 Unreimbursed Employee Expenses - $12,270</u>

Respondent also disallowed an unreimbursed employee expenses deduction of $12,270 for 2007. On her Schedule A petitioner entitled the entire amount "job search costs". As stated above, petitioner did have a $750 fee due to Amity in 2007. We are satisfied that petitioner paid that amount to remain in the exchange teacher program. Therefore, petitioner is entitled to a $750 deduction for 2007.

Again, petitioner provided no breakdown of the expenses and provided no substantiation for the remaining $11,520 of the "job search costs" deduction claimed for 2007. Therefore, we sustain respondent's disallowance of this amount.

III.  <u>Accuracy-Related Penalty</u>

Taxpayers may be liable for a 20-percent penalty on the portion of an underpayment of tax attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax.  Sec. 6662(a) and (b)(1) and (2).

The term "negligence" in section 6662(b)(1) includes any failure to make a reasonable attempt to comply with the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances.  See <u>Allen v. Commissioner</u>, 92 T.C. 1, 12 (1989), affd. 925 F.2d 348, 353 (9th Cir. 1991); <u>Neely v. Commissioner</u>, 85 T.C. 934, 947 (1985).  Negligence includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  An "understatement of income tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

The section 6662 accuracy-related penalty does not apply where the taxpayer shows that he acted in good faith and with reasonable cause.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted in good faith and with reasonable cause depends on the facts and circumstances of each case and includes the

knowledge and experience of the taxpayer and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs. For a taxpayer to rely reasonably upon advice of a tax adviser, the taxpayer must, at a minimum, prove by a preponderance of the evidence that: (1) The adviser was a competent professional with sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment. Neonatology Associates, P.A. v. Commissioner, 115 T.C. 43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002). Most important in this determination is the extent of the taxpayer's effort to determine the proper tax liability. Id.

The Commissioner has the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662. To satisfy that burden, the Commissioner must produce sufficient evidence showing that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Respondent has satisfied his burden by producing evidence that petitioner reported no income for 2005 and 2006, failed to substantiate claimed deductions, and had a substantial understatement of income tax for 2006.

Nonetheless, petitioner sought the advice of a return preparer for her 2005, 2006, and 2007 returns. Petitioner stated

that her preparer was an enrolled agent in the United States. Respondent did not dispute the competency of the preparer. The preparer counseled petitioner that her income was exempt from taxation in the United States under article 21. Petitioner, having no formal training in taxation and being new to the U.S. tax system, reasonably relied upon the advice of a competent tax return preparer and acted in good faith. Therefore, we do not sustain respondent's determination that the section 6662 accuracy-related penalty applies for 2005, 2006, or 2007.

IV. <u>Conclusion</u>

The Court has considered all arguments made in reaching our decision, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.