**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-64

UNITED STATES TAX COURT

MARGARET PAYNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3517-12S.                    Filed August 13, 2013.

Margaret Payne, pro se.

<u>Frederick C. Mutter</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>: This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code (Code) in effect when

the petition was filed. Pursuant to section 7463(b), the decision to be entered is

not reviewable by any other court, and this opinion shall not be treated as

precedent for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In a notice of deficiency dated December 6, 2011, respondent determined deficiencies in petitioner's Federal income tax of $1,951 and $4,550 for tax years 2008 and 2009, respectively. Respondent also determined section 6662(a) accuracy-related penalties of $390.20 and $910 for tax years 2008 and 2009, respectively. After concessions,[1] the issues for decision are: (1) whether petitioner is entitled to deductions for charitable contributions for the years in issue; and (2) whether she is liable for accuracy-related penalties under section 6662(a).

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in New York when her petition was filed.

---

[1]Petitioner agrees that she failed to report gambling winnings of $11,034 for 2008. In the notice of deficiency respondent included said amount as additional income and also allowed petitioner an additional gambling loss in the identical amount.

At the time of trial petitioner was employed by the Internal Revenue Service (IRS) as a revenue agent in the Manhattan office. At that time she had worked as a revenue agent for 20 years and had been employed by the IRS for 28 years. Petitioner graduated from college with two majors and a minor in accounting, finance, and economics and has completed some graduate work in forensic accounting. She has also passed some parts of the C.P.A. exam and at the time of trial was working at passing the remaining parts.

During the years in issue petitioner frequented casinos in Atlantic City, New Jersey. Petitioner visited casinos approximately three times per month and generally played the slots and sometimes played card games as well. Petitioner sometimes used cash to gamble, and other times she used a line of credit provided by the casino.

Petitioner asserts that as she won money at the casinos during the years in issue, she made cash contributions from her winnings to the Living Stone Baptist Church (LSBC) in Brooklyn, New York. Lemuel M. Mobley was the pastor of the church at the time of trial and had been the pastor of LSBC for 12 years. During the years in issue there were approximately 50 to 75 members of the church. Pastor Mobley knew all the members by name and face. Guests frequently attended LSBC, and each Sunday the number of guests varied from none to a few.

Each Sunday after services Pastor Mobley would personally greet all persons in attendance.

There are baskets in LSBC where congregants can make donations. The donations are generally made in cash, sometimes placed in the basket without an envelope and other times placed in envelopes with a congregant's name written on the envelope. After the Sunday service designated church members and/or trustees count and record the contributions. A record is kept of the contributions made each Sunday, and a report is made each week to the pastor as to the amounts of the contributions, including names of the contributors to the extent the contributions were identified. At the end of each year LSBC provided a letter to each congregant, upon request, reflecting the congregant's annual contributions. LSBC required the congregant to personally pick up his or her letter and to sign for it to acknowledge that he or she had received a letter reflecting annual contributions.

Juanita Stevenson has worked as a secretary for the IRS since 1987. Ms. Stevenson works at the same Manhattan office building as petitioner, and she and petitioner met when they were both working in taxpayer services at the IRS. Ms. Stevenson and petitioner have been friends and sometimes coworkers, although they worked in different sections at the IRS at the time of trial. Ms. Stevenson has

been a member of LSBC for 49 years. She regularly attends Sunday services and has volunteered in various ministries of LSBC.

Petitioner timely filed Forms 1040, U.S. Individual Income Tax Return, for 2008 and 2009. The returns were filed as married filing separately. On her 2008 return petitioner reported gambling winnings and gambling losses of $47,808. As indicated, the parties agree that the gambling winnings and losses for 2008 were $58,842. Petitioner also claimed a deduction for charitable contributions of $12,025 for 2008. Of this amount respondent disallowed a purported cash contribution to LSBC of $6,047. On her 2009 return petitioner reported gambling winnings and losses of $13,250. No adjustments were made to the gambling winnings and losses for 2009. Petitioner also claimed a deduction for charitable contributions of $25,140 for 2009. Of this amount respondent disallowed a deduction for a purported cash contribution to LSBC of $14,000.

During the examination of petitioner's 2008 and 2009 returns, respondent's agent questioned petitioner about the claimed charitable contribution deductions. In response to the examination petitioner provided the examining agent with copies of purported letters from LSBC. The letters purported to be on the letterhead of LSBC, are dated December 30, 2008, and December 30, 2009, and

state that petitioner made contributions to LSBC in 2008 and 2009 of $6,047 and $14,000, respectively. The letters are purportedly signed by Pastor Mobley.

After receipt of the aforementioned letters the examining agent contacted LSBC to ascertain whether petitioner was a member and whether in fact she had made contributions to LSBC. Pastor Mobley spoke with the examining agent, Ms. Cohen, and advised that petitioner was not a member of LSBC, that he did not know petitioner, and that petitioner had not made any contributions to LSBC. He advised that the letters reflecting contributions were not signed by him and that the letterheads were a "cut and paste job".[2]

Following his meeting with the revenue agent, Pastor Mobley advised the congregation at a Sunday service that an IRS agent was conducting an investigation concerning alleged contributions to LSBC and asked the congregation whether anyone knew petitioner. After the service, Juanita Stevenson came forward and advised Pastor Mobley that she knew petitioner. Ms. Stevenson advised that petitioner sometimes went by the nickname "Schouchi". At some later point petitioner contacted Pastor Mobley to discuss this matter. There are varying accounts from the parties as to what was discussed and what

---

[2]Pastor Mobley also indicated that his name was misspelled on both letters.

happened next. Pastor Mobley wrote a letter dated May 6, 2011, where he stated as follows:

> I am writing this letter to recant statements that I made in a previous letter dated April 7th, 2011, that was written, as it relates to Margaret Payne. I stated that I didn't know who she was because she was using another name. The amounts of money she stated that she gave were true. She pieced together a financial statement and stated to me that she had one of her children to sign my name.
>
> After Sunday morning worship on Sunday April 10th, 2011, Nita Stevenson came to my office and admitted that she was Margaret Payne. She stated that she was sorry for what she had done. She asked for forgiveness and I forgave her for what she had done to me as well as to the church. I did not give her or anyone else permission to sign my name on any document.
>
> Mrs. Cohen from the IRS office called for a few days at least three to four times a day. She stated that whomever she talked to told her that The Living Stone Church was a small church and that nobody in this church could give that amount of money. Her attitude was not appropriate and especially when I found out whom Margaret Payne was she talked to me as if I didn't know what I was doing. I didn't like the way she talked to me at all.

Pastor Mobley signed two letters dated May 11, 2011, indicating that petitioner had made contributions to LSBC in 2008 and 2009 of $6,047 and $14,000, respectively. Pastor Mobley provided three contradictory explanations as to the events. At one point he stated that the letters actually represent contributions from Ms. Stevenson. At another point he indicated that he may have confused petitioner with Ms. Stevenson, and at another point he suggested that

petitioner had promised to make a contribution at some later point in return for these letters.

## Discussion

The Commissioner's determination set forth in a notice of deficiency is presumed correct, and a taxpayer generally bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Pursuant to section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioner does not contend that section 7491(a) shifts the burden of proof to respondent, nor does the record establish that petitioner satisfies the section 7491(a)(2) requirements.

## I. Charitable Contributions

Section 170 allows deductions for charitable contributions made during a taxable year, provided the taxpayer verifies the contributions. Taxpayers are required to substantiate donations made by cash or check via (1) canceled checks, (2) receipts from the donee (showing the donee's name and the date and amount of

the donation), or (3) other reliable written records. Sec. 1.170A-13(a)(1), Income Tax Regs.

We must decide whether petitioner has satisfied her burden of establishing that she made contributions of $6,047 and $14,000 in 2008 and 2009, respectively. The record in this matter is full of inconsistencies, contradicting testimony, fabricated documents, and simple untruths. Sorting through the testimony of three witnesses, each of whom not only contradicted the testimony of the others but also contradicted his or her own testimony and documents, leads the Court to conclude that petitioner's only motivation in this case was a misguided and inept attempt to support claimed charitable contribution deductions through a fictional account of the past.

Petitioner was not a member of LSBC during the years in issue. Pastor Mobley was clear that he knew all his congregants by name and face and that he did not know petitioner. Pastor Mobley apparently first met petitioner in 2011 after the examination of petitioner's tax returns commenced. It seems improbable that petitioner ever attended LSBC and even less probable that she made donations in any amount. It appears highly probable that petitioner, in concert with her longtime friend and fellow IRS employee, cut and pasted stationery from LSBC and provided the same to the IRS agent examining the returns in an attempt to

support the claimed deductions. That attempt failed when the IRS agent attempted to verify the reported contributions with Pastor Mobley. The pastor made clear that he did not authorize the receipts to be prepared or issued on LSBC stationery, nor did he sign any such receipts. Even after these false documents were exposed by the examining revenue agent, petitioner continued to pursue her efforts to obtain documents in support of the reported contributions. Pastor Mobley subsequently wrote letters appearing to support the claimed charitable contributions to LSBC. Pastor Mobley presented various contradicting versions of the past. While the prevailing stories vary, one matter of which we are absolutely certain is that petitioner has not presented any credible evidence that she made the contributions to LSBC reported on her 2008 and 2009 tax returns.

Petitioner has not established that she is entitled to the claimed deductions, and respondent's determinations are accordingly sustained.

## II. Accuracy-Related Penalties

Section 6662(a) and (b)(1) and (2) imposes a penalty of 20% of the portion of an underpayment of tax attributable to the taxpayer's negligence, disregard of rules or regulations, or substantial understatement of income tax. "Negligence" includes any failure to make a reasonable attempt to comply with the Code, including any failure to keep adequate books and records or to substantiate items

properly. See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). Negligence has also been defined as a failure to exercise due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348, 353 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect. See id. at 447; see also Rule 142(a); Welch v. Helvering, 290 U.S. at 115. Respondent determined the accuracy-related penalty for each year was due to negligence or disregard of rules or regulations. Petitioner claimed deductions on her 2008 and 2009 returns for purported contributions that she is unable to substantiate. Respondent's burden of production under section 7491(c) has been satisfied.

The section 6662(a) accuracy-related penalty does not apply with respect to any portion of an underpayment if the taxpayer proves that there was reasonable cause for such portion and that she acted in good faith with respect thereto. Sec. 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including the taxpayer's efforts to assess the proper tax liability, the knowledge and the experience of the taxpayer, and the reliance on the advice of a professional, such as an accountant. Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner offered no argument or other evidence to show that there was reasonable cause for the deductions claimed and that she acted in good faith with respect to the underpayments. We are satisfied that petitioner, who has been employed as an IRS revenue agent for a number of years, did not make a good-faith effort to properly determine her 2008 and 2009 Federal income tax liabilities and that the underpayments result from her very deliberate and knowing attempt to reduce her tax liabilities. Accordingly, we hold that petitioner is liable for the section 6662(a) accuracy-related penalty for 2008 and 2009.

To reflect the foregoing,

Decision will be entered

for respondent.